*641 OPINION BY
Judge RENÉE COHN JUBELIRER.
Shari Neff (Objector) appeals an April 3, 2014 Order of the Northumberland County Court of Common Pleas (trial court) overruling Objector’s Objections and Exceptions to the Northumberland County Tax Claim Bureau’s (Bureau) Petition' for Confirmation of the upset tax sale of Objector’s home and confirming the tax sale absolutely.[3] On appeal, Objector argues that the'Bureau did riot comply with multiple notice provisions of the "Real Estate Tax Sale Law[4] (Law) and that the trial court abused its discretion by deferring its fact finding responsibility to counsel for the successful bidders at the upset tax sale. Because Objector received actual notice of the tax sale, the Bureau properly obtained a waiver of the personal service requirement of the Law, and the trial court acted within its discretion, we affirm.
I. Background
At issue in this appeal is the upset tax sale of Objector’s home at 145 Leaf Lane, Sunbury, Pennsylvania (Property) to satisfy a 2011 tax delinquency. The following relevant facts are not in dispute. At the time of the sale, Objector was the co-owner of the Property with her then husband, Nicholas Neff.[5] Objector has lived at the Property since 1987 and currently lives at the home with her two dáughters, ages twenty-four and fifteen, and her twenty-year-old son. Objector’s husband vacated the Property in May 2008, but the couple continued to pay equal shares of the taxes for tax years 2008-2010.- [1] For several years prior to tax year 2011, Objector and her husband entered into payment agreements with the -Bureau. Objector entered into such an agreement- with the Bureau on September 30, 2011 for tax years prior to 2011 and defaulted on said agreement on April 10, 2012. (Purchaser’s Hr’g Ex. 1; Hr’g Tr. at 31-32, R.R. at 58a-59a.) Because of the default, pursuant to Section 603 of the Law, Objector was prohibited from entering into a new agreement for three years.'[6] Objector and her husband saved the home from being subject to a tax sale in previous tax years by meeting at the Bureau’s office and paying equal shares of the delinquent taxes.
According to. Objector, she and her husband were going through a contentious divorce in the summer of 2013 and could not reach an agreement for splitting the delinquent property taxes for tax year 2011. Objector testified that she had the money to pay the delinquent taxes in full, but did not want to- make the payment without a contribution from her ex-husband.
The Bureau sent notice that the Property was scheduled to be sold at a September 18, 2013 upset tax sale via certified mail on June 11,2013 to both Objector and her husband at their respective addresses. Objector’s husband signed for the notice on June 17, 2013, but the notice sent via certified mail to Objector was returned unclaimed. (Certified Mail .Return Receipt for Nicholas Neff, Bureau’s Hr’g Ex. *642 A, R.R. at 110a; Certified Mail Return Receipt for Shari Neff (Unclaimed), Bureau’s Hr’g Ex. B, R.R. at 107a.) The Bureau then ostensibly mailed a second notice to Objector on September 4, 2013. (Ten-Day Sale Notice, Bureau’s Ex. F, R.R. at 143a-45a.) There is a dispute over whether the evidence presented supports a finding that the ten-day notice was sent via certified mail, through first-class mail, or at all.
The Bureau published notices of the tax sale on August 17, 2013 in the Shamokin News Item, Sunbury Daily Item, the Milton Standard Journal, and the Northum-berland Legal Journal. (Proof, of Publication, Bureau Hr’g Ex. D, R.R. at 114a-31a.) Additionally, the Property was posted three separate times by Valerie McDowell of Palmetto Posting, the Bureau’s designee ■ for posting tax sale notices. (Posting Report, Bureau’s Ex. C, R.R. at 112a.) Ms. McDowell, on behalf of Palmetto Posting, served the dual role of both posting the Property and attempting to personally serve Objector with notice of the tax sale. Palmetto Posting is required by contract with the Bureau to attempt personal service of notice on property owners three times: once between eight a.m. and noon; once between noon and four p.m.;’ and once between four p.m. and eight p.m. (Hr’g Tr. át' 39, R.R. at 66a.) Ms. McDowell attempted to personally serve Objector with notice on three occasions: August 5, 2013 at 1:21 p.m.; August 8, 2013 at 4:13 p.m.; and August 9, 2013 at 9:19 a.m. (Posting Report, Bureau’s Ex. C, R.R. at 112a.) Objector was not at home at any of these times and Ms. McDowell posted a fluorescent pink notice on the steps leading to the front door of the Property each- of the three times she attempted to personally serve Objector with notice. Each time she returned to the Property, the prior notice she had posted on the steps was -no longer there. (Hr’g Tr. at 36, R.R. at 63a.)
On August 20, 2013, the Bureau filed a “Petition to Waive Requirement of Personal Service of Notice of Tax Sale” (Waiver Petition) with the trial court seeking to waive personal service of notice of the September 18, 2013 upset tax sale to Objector and ninety-six other owner-occupants of property scheduled to have their homes sold at the upset tax sale. The Waiver Petition averred that the Bureau “attempted to personally serve notice by Palmetto Posting Cofinpany], the server designee, all owners of owner-occupied property subject to the September 18, 2013 Upset Sale” and that “at least three (3) separate attempts have been made by the server designee on each property.” (Waiver Petition ¶¶ 3, 6, R.R. at 6a-7a.) The Waiver Petition also avers that all other notice requirements of the Law were accomplished for each property. (Waiver Petition ¶ 6, R.R. 6a.) The stated justification for the waiver was that “[a] denial of this request would rpsult in the ... Bureau’s inability to offer these properties for public tax sale on September 18, 2013.” (Waiver Petition ¶ 8, R.R. 7a.) Attached to the Waiver Petition was a document showing that personal service was attempted for the Property on August 5, 2013 at 1:21 p.m.;,, August 8, 2013 at 4:13 p.m.; and August 9, 2013 at 9:19 a.m. (Waiver Petition, Attachment, R.R. at 11a.) The trial court granted the Bureau’s Waiver Petition on the same day it was filed, August 20, 2013. (Trial Ct. Order, August 20, 2013, R.R. at 12a.)
The Bureau sold the Property on September 18, 2013 as scheduled. The winning bidder at the sale was Daniel Lewis, who later assigned his rights-as the successful bidder to both himself and Guy Leroy (together, Purchasers).
*643 On October 16, 2013, Objector timely filed Objections and Exceptions to the upset tax sale of the Property.[7] Therein, Objector .alleges that the Bureau sold the Property at the upset tax sale in violation of Objector’s due process rights and the notice requirements of the Law. (Objections and Exceptions ¶¶ 4-5, R.R. at 22a-24a.)
A hearing was held on December 19, 2013 at which Janice Nestico, Director of the Bureau,[8] Objector,[9] and Ms, McDowell[10] testified. Objector testified that she had no notice of the September 18, 2013 tax sale. She did not recall receiving notice by mail or personal service. Objector testified that she did not learn of the sale until she was informed of the sale by her daughter at 11:00 a.m. on the date of the sale. Objector acknowledged that she took down a fluorescent pink poster posted on her house, presumably the one posted on August 9, 2013. However, Objector testified that she read the poster only until she saw the date of August 17, 2013, which Objector understood to be the date by which her 2011 taxes had to be paid.[11] Objector did not recall reading the section of the notice that listed a date or location of the pending upset tax sale.
Upon- review of the evidence, the trial court issued an Order on April 3, 2014, overruling Objector’s Objections and Exceptions and confirming the sale absolutely. The trial court explained:
Having reviewed the memoranda provided[,] this Court recollects the testimony at the hearing on the objections in accordance with the testimonial assertions made by the Purehaser[s] in their memorandum. This Court believes that a forward-looking review of Horton v. Washington County Tax Claim Bureau, Petition of Lewis, 44 A.3d 710 (Pa.Cmwlth.2012) and the corresponding cases provided in the Purchaser’s memorandum- demonstrate that the due process requirements of the notice provisions are sacrosanct. Understanding this, the Court reviewed the record and determined that on several occasions during the hearing, the Objector testified to her “actual notice” of the impending tax sale. The statutory provisions were substantially complied with and the testimony of the Objector was credible.
(Trial Ct. Order, April 3, 2014, n. 1.) This appeal followed.[12]
II. Objector’s Appeal
On appeal, Objector first argues that the upset tax sale of the Property must be set aside because the Bureau did not strictly *644 comply with all notice requirements of the Law and due process. Objector identifies four notice-related defects in the trial court’s Order. In addition to the defective notice, Objector argues that the trial court abused its discretion by relying on factual arguments put forward by Purchasers in their memorandum of law rather than making findings of fact based on the record. We shall address Objector’s four notice-related arguments first and then proceed to Objector’s argument with regard to judicial discretion.
A. Notice Requirements
. [2,3] A property owner’s right to notice “prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of. the Fourteenth Amendment to the United States Constitution and by the Law.” Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa.Cmwlth.2006). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:
[p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.
Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). Due process is satisfied when the Bureau, before commencing with a tax sale, “provided ‘notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.’ ” Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).
The notice provisions of the Law are designed to “guard against deprivation of property without due process.” Donofrio v. Northampton County Tax Claim Bureau, 811 A,2d 1120, 1122 (Pa.Cmwlth.2002). Because the government actor attempting to take property bears the constitutional duty to provide notice prior tó a tax sale, our inquiry into whether adequate notice was provided must focus “not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the [Law].” Smith v. Tax Claim Bureau of Pike County, 834 A.2d 1247, 1251 (Pa.Cmwlth.2003). However, even- technical compliance with the statute may not always satisfy the demands of due process since the “Law states the minimum effort to bé done by a tax claim bureau.” In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes, 105 A.3d 76, 83 (Pa.Cmwlth.2014) (emphasis added); see also Geier v. Tax Claim Bureau of Schuylkill County, 527 Pa. 41, 588 A.2d 480, 483 (1991) (holding that “even though the Bureau technically complied with the notice requirements of the tax sale statute, the Bureau failed to satisfy the demands of due process in conducting the sale”). Due process requires that the “practicalities ahd peculiarities of the case” are considered and given their “due regard.” Mullane, 339 U.S. at 314, 70 S.Ct. 652.
The notice requirements of the Law relevant to this case are set forth in Sections 602 and 601(a)(3) of the Law. 72 P.S. § 5860.602; 72 P.S. § 5860.601(a)(3). In all tax sale cases, the tax claim bureau “has the burden of proving compliance with the statutory notice provisions.” Krawec v. Carbon County Tax Claim Bureau, 842 A.2d 520, 523 (Pa.Cmwlth.2004). Section 602 requires three different forms *645 of notice to property owners prior to an upset tax sale: publication, posting, and mail.[13] “If any of the three types of notice is defective, the tax sale is void.” Gladstone v. Federal National Mortgage Association, 819 A.2d 171, 173 (Pa.Cmwlth.2003). Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of the Law are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency, Donofrio, 811 A.2d at 1122. However, strict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received actual notice of a pending tax sale. Sabbeth v. Tax Claim Bureau of Fulton County, 714 A.2d 514, 517 (Pa.Cmwlth.1998).
In addition to the notice requirements of Section 602 of the Law, if the property is, as here, occupied by the owner, Section 601(a)(3) of the Law requires that each owner-occupant receive additional notice of a tax sale by personal service. Section 601(a)(3) provides:
No owner-occupied property may be sold unless the bureau has given the owner[-]oceupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the' sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting ' forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service; the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.
72 P.S. § 5860.601(a)(3). The requirements of Section 601(a)(3) are cumulative and apply in addition to the tax claim bureaus’ obligations to provide notice through publications, posting, and mail. *646 We have said that the General Assembly-made a distinction between the notice requirements of Section 602 and 601(a)(3) of the Law due to the General Assembly’s “heightened concern for owner[-]occupants being divested of the. very property in which they are residing.” Matter of Tax Sales by Tax Claim Bureau of Dauphin County, 651 A.2d 1157, 1159 (Pa.Cmwlth.1994). “By enacting [S]ection 601[ (a)(3) ], the [General Assembly] expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner [with] increased protection by way of additional notice.” McKelvey v. Westmoreland County Tax Claim Bureau, 983 A.2d 1271, 1274 (Pa.Cmwlth.2009). Thus, without receiving a waiver from a trial court, a tax claim bureau may not sell an owner occupied property absent personal notice to an owner-occupant because actual notice of the tax sale does not waive strict compliance with the personal service requirements of Section 601(a)(3). Id.
In sum, in the absence of actual notice, the Bureau must prove strict compliance with the notice requirements of Section 602 of the Law. Further, and notwithstanding whether a taxpayer received actual notice, the Bureau must demonstrate that it personally served notice on any owner-occupant of the Property subject to the upset tax sale or obtained a waiver of personal service from the trial court.
1. Compliance with the Notice Requirements of Section 602
Objector contends that the Bureau did not strictly comply with the notice by first-class mail requirements of Section 602(e)(2) of the Law and that the trial court erred by determining that she had actual 'notice of the September 18, 2013 upset tax sale. We shall address each issue in turn.
i; Proof of Mailing
Section 602(e) of the Law requires a tax claim bureau to send notice of a pending upset tax sale by mail. First, Section 602(e)(1) mandates tax claim bureaus to send notice by “certified mail, restricted delivery, return receipt requested, postage prepaid.” 72 P.S. § 5860.602(e)(1). If the certified mailing is returned unsigned or signed by someone other than the owner of record, then “at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address — ” 72 P.S. § 5860.602(e)(2) (emphasis added). Here, notice of the sale was sent to Objector by certified mail on June 11, 2013 and was returned to the Bureau unclaimed. Thus, pursuant to Section 602(e)(2) of the Law, the Bureau was required to send Objector notice by first-class mail and supply proof of mailing. Objector argues that the proof of mailing required by Section 602(e)(2) was insufficient.
In Horton v. Washington County Tax Claim Bureau, 623 Pa. 113, 81 A.3d 883 (2013), our Supreme Court interpreted the phrase “proof of mailing” in Section 602(e)(2) of the Law and held that our previous precedent under which “ ‘proof of mailing’ [could] be satisfied only via proffer of a Certificate of Mailing, USPS Form 3817, [did] not reflect the intention of the [General Assembly].” Id. at 890 (emphasis in original). In Horton, the tax claim bureau proffered a “United States Postal Service '[ (USPS) ] Consolidated Postage Statement — First-Class Mail & Priority Mail” signed by a USPS employee, bearing a USPS stamp, and showing the mail date. Id. at 891. This document was accompanied by a list of persons sent notice, which included the objectors. Further, and of *647 particular relevance to the Supreme Court, the tax claim bureau proffered the actual envelopes mailed to the objectors and “other documents from the USPS as evidence.” Id. at 891 (emphasis in original).[14] The Supreme Court held that “these USPS documents satisfied] the statutory-mandate for ‘proof of mailing[5] in subsection 602(e)(2).” Id. at 892.
Unlike the documentation in Horton, the evidence proffered by the Bureau here neither includes USPS official documents, signed or unsigned by a USPS employee, nor does the evidence include the actual envelopes sent to Objector. The document proffered by the Bureau is a fifty-seven page list of all the names and addresses of property owners to which the Bureau ostensibly sent notice by first-class mail on September 4, 2013. (Proof of Mailing, Bureau’s Ex. F, R.R. at 144a-45a.) Attached to the bottom of each page is a label printed from the Bureau’s postage meter showing the amount of postage paid for mailing the notice to the addresses listed on each page. (Proof of Mailing, Bureau’s Ex. F, R.R. at 144a-45a; Hr’g Tr. at 29, R.R.’ at 56a.) Next to the label is a postage stamp, allegedly emplaced by the USPS, listing a September 4, 2013 mail date. (Proof of Mailing, Bureau’s Ex. F, R.R. at 144a-45a.) This stamp is the only proof of mailing in any way connected to the USPS and no other USPS document was proffered. (Hr’g Tr. at 29-30, R.R. at 56a-57a.) Because the Bureau did not proffer any documents from the USPS, we conclude that the evidence here falls short of the standard set forth in Horton and the Bureau did not strictly comply with the notice 'requirement of Section 602(e)(2) of the Law.-
ii. Actual Notice
Having concluded that the Bureau did not strictly comply with Section 602(e)(2) of the Law, we must now consider whether Objector had actual notice of the September .18, 2013 upset tax. sale, thereby ameliorating the need for strict compliance. Sabbeth, 714 A.2d at 517. Whether, a taxpayer has actual notice of .an upset tax sale of his or her property is a question of fact that will not be disturbed on appeal if supported by substantial evidence. Aldhelm, Inc. v, Schuylkill County Tax Claim Bureau, 879 A.2d 400, 407 (Pa.0Cmwlth.2005). Actual notice in the tax sale context “encompasses both express actual notice and implied' actual notice.” Sabbeth, 714 A.2d at 517 (emphasis in original). Stated otherwise, “actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as''he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.” Id. (quoting Black’s Law Dictionary 1061-62 (6th ed. 1990)).
Here, the trial court concluded that Objector’s testimony was credible and that “on several occasions during the hearing [ ] Objector testified to her .‘actual notice’ of the impending tax sale.” (Trial Ct. Order, April 3, 2014, n.l.) Upon review of the record, we agree that Objector had actual notice of the September 18, 2013 upset tax sale of the Property and the trial court’s *648 finding of actual notice is supported by substantial evidence. Objector testified that she saw a pink fluorescent poster on her Property and read a portion of the document. (Hr’g Tr. at 53, 61, R.R. at 80a, 88a.) It is undisputed that the posted notice which Objector read included the following language:
Notice is hereby given by the TAX CLAIM BUREAU in and for the County of Northumberland under the Act of 1947, P.L. 1368, as amended, that the said BUREAU will expose at Public Sale in the NORTHUMBERLAND COUNTY ADMIN. BLDG., 399 S. 5th ST. Sunbury, Pennsylvania, at 10:00 A.M. SEPTEMBER 18, 2013.
(Posted Notice, R.R. at 113a.)
Objector’s assertion that she did not read the notice in its entirety is not determinative for numerous reasons. Similar to Sabbeth, the record here is replete with facts that show Objector had, at the very least, implied actual notice of the táx sale. However, unlike in Sabbeth, where the certified letter was unopened on the objector’s desk, Objector here possessed the notice which clearly and unequivocally stated that the Property was to be sold on September 18, 2013 unless the tax delinquency was paid by a date certain, and made a decision to read only a part of that notice. Objector understood that her home was in jeopardy as a result of defaulting on a payment agreement. Further, the portion of the notice she admits she read alerted her to the fact that there were looming consequences for her failure to pay. Based on these facts, although Objector apparently decided not to read the entire notice, we find that Objector had actual notice of the impending upset tax sale.
Because the circumstances show that Objector had actual notice of the upset tax sale, strict compliance with the statutory notice requirements of Section 602 of the Law, including the “proof of mailing” requirement of Section 602(e)(2), are waived. Sabbeth, 714 A.2d at 518.
2. Compliance with the Notice Requirements of Section 601
i. Waiver of Notice by Personal Service
Objector next argues that the Bureau did not personally serve her with notice of the September 18, 2013 upset tax sale of her home, as required by Section 601(a)(3). of the Law and that the trial court erred by granting the Bureau a waiver of,the notice by personal service requirement. Objector contends that, by only attempting to provide notice by personal service during normal work hours, the Bureau acted with utter disregard for her rights and did not establish good cause for the waiver. Objector contends a reasonable effort to provide personal service of notice would require the designated server to have attempted personal service after work hours or on the weekend. Further, Objector contends that the process by which the Waiver Petition was presented to the trial court shows a disregard for her rights. Objector asserts that she was never served with the Waiver Petition; therefore, she was not provided an opportunity to challenge the Waiver Petition.
Purchasers respond by arguing that the Law does not prescribe the number of attempts to personally serve an owner-occupant that must be pursued prior to seeking a waiver from the trial court. According to Purchasers, three attempts at personal service is standard practice in many counties throughout the Commonwealth and satisfies the good cause shown requirement of Séction 601(a)(3). Purchasers also argue that, notwithstanding any errors committed by the trial court in granting the Bureau’s Waiver Petition, Ob *649 jector had actual notice of the upset tax sale, and actual notice nullifies any objections under Section 601(a)(3) of the Law.
When personal service of notice cannot be effectuated, Seétion 601(a)(3) permits a tax bureau to seek a waiver of the personal service of notice requirement from a court of common pleas. Section 601(a)(3) states: “If [ ] personal notice[1] cannot be served [on an owner-occupant] within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown.” 72 P.S. § 5860.601(a)(3). “Good cause shown” is not defined by the Law and courts of this Commonwealth have yet to interpret the meaning of the term in the tax sale context.[15]
Although the term “good cause shown” has not been interpreted within the context of the Law, courts of this Commonwealth have defined the term with regard to its placement in other statutes and rules of procedure. In. Trexler v. Unemployment Compensation Board of Review, 27 Pa.Cmwlth. 180, 365 A.2d 1341, 1344 (1976), we stated that “good cause” as used in Section 402(a) of the Unemployment Compensation Law[16] “being undefined in the [Law], is a'flexible term and therefore not amenable to general' rules or rigid formulas.” We reasoned that “its meaning must be deduc[ed] from the facts of each case in a manner that is consistent with the [Law’s] fundamental purpose....” Id. Similarly, the Superior Court, in State Farm Insurance Companies v. Swantner, 406 Pa.Super. 235, 594 A.2d 316, 320 (1991), was confronted with the term “good cause shown” in the context of requiring a plaintiff to submit to a medical examination under Section 1796(a) of the Motor Vehicle Financial Responsibility Law.[17] The Superior Court held that “good cause shown” is a factual-based inquiry and noted that'
*650 [w]e sometimes become enamored with tests, steps and guidelines to the point where • they "interfere with the judicial function. Looking to .the definition of “good cause. shown,” Black’s Law Dictionary, 5th Edition, defines it as “substantial reason, one that affords a legal excuse[. Legally sufficient ground or reason. [Pjhrase ‘good cause’ depends upon circumstances of individual case, and finding of its existence, lies largely in discretion of officer or court to (which decision is committed, Wilson v. Morris, [ — ] Mo. [Mont.] [-], 369 S.W.2d 402, 407 [ (1963) ].” .
Id. (quoting Black’s Lam Dictionary (5th ed. 1979)) (emphasis in original). More recently, in Smith v. Borough of Morrisville (Pa.Cmwlth., No. 550 C.D. 2015, filed October 23, 2015), slip op. at 6, 2015 WL 6475144,[18] this Court utilized the same definition of “good cause” used ¡by the Superi- or Court above when interpreting the term in the context of a court of common pleas’ decision to reinstate an appeal pursuant to Rule 1006 of the Pennsylvania Rules of Civil Procedure for Magisterial District Judges, Pa. R.C.P.M.D.J. 1006. There, we stated, “the determination of whether good cause has been demonstrated is trusted to the trial court’s sound discretion.” Smith, slip op. at 7 (quoting Anderson v. Centennial Homes, Inc., 406 Pa.Super. 513, 594 A.2d 737, 739 (1991)); see also Uhl v. C.H. Shoemaker & Son, Inc., 432 Pa.Super. 230, 637 A.2d 1358, 1360 (1994) (holding that, in the context, of establishing good cause to have the mental or physical condition of a party be independently examined under Pennsylvania- Rule of Civil Procedure 4010(a), “[w]hether good cause exists is a determination within the discretion of the trial court”) (citing John M. v. Paula T., 524 Pa. 306, 571 A.2d 1380, 1383 (1990)).
Consistent with case law, we focus our inquiry, on whether the trial court abused its discretion by granting, the Bureau’s Waiver Petition and by considering the facts of this case in light of the fundamental purposes of the Law.[19]
The primary purpose of tax sale laws is to ensure “the collection of taxes, and not to strip away citizens’ property rights.” Rice, 901 A.2d at 575. Our Supreme Court has said that tax sale laws “were never meant to. punish taxpayers who omitted. through oversight or error (from which the best of us are never exempt) to pay their taxes.” In re Return of Sale of Tax Claim Bureau (Ross Appeal), 366 Pa. 100, 76 A.2d 749, 753 (1950). Instead, tax sale laws are “meant to protect *651 the local government against wilful [sic], persistent, long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently-given short shrift.” Id. Because the purpose of the Law is to protect local governments • from delinquent taxpayers, failed attempts at personal service of notice may be, depending on the specific facts in the case, legally sufficient to obtain a waiver under Section 601(a)(3) of the Law.
We conclude here that the trial court did not abuse its discretion by granting the Bureau’s Waiver Petition. The Waiver Petition averred that the Bureau attempted to personally serve Objector on three different days at three different times of the day and that it satisfied the other noticé requirements of Section 602 of the Law. Attached to the Waiver Petition was a document developed by Palmetto Posting stating that Ms. McDowell attempted personal service three times and listed the times and dates of each attempt. The trial court, cognizant that someone’s home was at stake, that the purpose of the Law is to protect local governments from persistent tax delinquents, that the Bureau attested to the fact that it satisfied the notice requirements of Section 602 of the Law, and attempted personal service three times at three different times of the day, utilized its discretion to determine that personal service of notice should be waived; The trial court did not abuse its discretion.[20]
Objector next contends that the process by which the trial court exercised its discretion, namely an ex parte proceeding without notice being given to Objector, violates the strict notice requirements of the Law.[21] The Law does not set *652 forth the nature of the proceeding required for considering a petition to waive personal service under Section 601(a)(3) and we find no error in the trial court’s decision to address the Bureau’s Waiver Petition without notice to Objector. Because the ex parte process at issue concerns the Bureau’s inability to serve Objector with notice of the tax sale, it follows that notice of an ex parte proceeding to waive service would be superfluous. Should Objector receive notice of the Waiver Petition and be given an opportunity to contest the Waiver Petition, there would be no need to waive personal service because Objector could be personally Served with notice at the hearing.
ii. The Bureau’s Server Designee
Objector' next argues that the Bureau violated the strict requirements of Section 601(a)(3) by attempting personal service of notice by a designated server, Ms. McDowell of Palmetto Posting, who was not authorized to- provide such service by ■■the Law. Purchasérs respond by asserting that the trial court’s decision to waive the requirement of personal service obviates any issue regarding whether the Bureau’s server designee was properly appointed by the county commissioners by resolution.
We agree with Purchasers. Section 601(a)(3) requires that personal service of notice of the tax sale be given “by the sheriff or his deputy or- person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause.” 72 P.S. § 5860.601(a)(3). Section 601(a)(3) also states, however, that “[i]f such personal notice cannot be served within twenty-five (25) days ..., the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown.” 72 P.S. § 5860.601(a)(3) (emphasis added). When interpreting a statute, we must presume that the General Assembly intended every word to have effect. Bilka v. Department of Transportation, Burean of Driver Licensing, 92 A.3d 1253, 1258 (Pa.Cmwlth.2014). -By including the phrase “such personal service” and not limiting the waiver authorization to the inability to make service, the General Assembly intended that both requirements of Section 602(a)(3)— that personal service be made and that service be made by an authorized person— may be waived by the trial court upon a good cause showing. Because we concluded supra that the trial court acted within its discretion to .grant the Bureau’s Waiver Petition, we now conclude that the requirement that notice upon an owner-occupant via personal service by a sheriff, a sheriffs deputy, or an entity approved by the county commissioners by resolution was properly waived, and will not defeat the. tax sale.
B. Abuse of Discretion in Fact-Finding
As a final matter, Objector argues that the trial court abused its discretion by basing its factual findings on arguments contained in the Purchasers’ memorandum of[1] law rather than making independent findings based on the evidence presented. In a July 23, -2014 order, the trial court determined that the reasons for its April 3, 2014 Order were adequately reflected in its Order and, therefore, did not issue an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules .of Appellate Procedure. Pa. R.A.P.1925(a), ■ (Trial Ct. Order, July 23,2014.) The trial court further stated: “[b]ecause the Court relied in no small .way upon the memorandum of law *653 submitted to this Court by the Purchasers], the Court orders and directs [that the Purchasers’ Memorandum of Law] be made part of the record on appeal.” (Trial Ct. Order, July 23, 2014.) Objector contends that the above language included in trial court’s July 23, 2014 order demonstrates that the trial court abdicated, its role as an independent fact-finder.
It is the trial court’s exclusive province, as- fact-finder, to evaluate evidence adduced at the proceedings, make credibility determinations, and draw inferences from the evidence presented. Smith, 834 A.2d at 1251. “Pennsylvania courts have long recognized the broad discretion given to the fact-finding [t]rial [c]ourt....” Brady v. Borough of Dunmore, 84 Pa.Cmwlth, 331, 479 A.2d 59, 62 (1984). According to our Supreme Court:
“judicial discretion” requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration.... An “abuse of discretion” or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, [the] law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.
In re Deed of Trust of Rose Hill Cemetery Association Dated Jan. 14, 1960, 527 Pa. 211, 590 A.2d 1, 3 (1991) (internal citations omitted).
We understand the trial court’s July 23, 2014 order as revealing that the trial court found the arguments set forth in Purchasers’ memorandum of law persuasive. Of course, a trial court does not abuse its discretion by finding one party’s arguments more persuasive than another; persuading a judge or jury to adopt a certain understanding of the facts is a core task of counsel presenting arguments before any court. Objector has proffered no evidence supporting her contention that the ¡trial court’s factual findings were not based upon the evidence presented. In fact, upon .review of the record, we conclude that the trial court’s findings are supported by the evidence. Accordingly, we find that the trial court did not abuse its discretion.
III. Conclusion
In conclusion,, we hold that the trial court’s determination that Objector received actual notice of. the September 18, 2013 upset tax sale of her Property is supported by substantial evidence; the trial court did not err by granting the Bureau’s Waiver-Petition; and the trial court did not abuse-its discretion in fulfilling its' fact-finding role.- Accordingly, the April- 3, 2014 Order of the trial court is affirmed.
Judge BROBSON dissents.

ORDER

NOW, January '21, 2016, the April-3, 2014 Order of the Court of Common Pleas of Northumberland Coúnty, entered in the above-captioned matter, is AFFIRMED.

. The caption in this matter, which was developed by Objector at her initial filing in the trial court, refers to a September 19, 2012 tax sale. However, the record in this matter confirms that Objector’s home was exposed to a tax sale on September 18, 2013, not September 19, 2012.

. Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.

. Objector and Mr. Neff have since divorced.

. 72 P.S. § 5860.603. Section 603 of the Law states, in relevant part: “If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years df the default.” Id.

. Purchasers petitioned the trial court to intervene in the matter on October 28, 2013, which was granted without objection.

. Ms. Nestico’s testimony at the December 19, 2013 hearing is found at pages 36a-61a of the reproduced record.

. Objector’s testimony at the December 19, 2013 hearing is found at pages 71a-94a of the reproduced record.

. Ms. McDowell’s testimony at the December 19, 2013 hearing is found at pages 61a-70a of the reproduced record.

. The posted notice stated that the. notice of the tax sale will be published in the Shamokin News Item, Sunbury Daily Item, and Milton Standard plus other county publications on August 17, 2013. (Posted Notice, R.R. at 113a.) The notice further states that the delinquency of $3,421.90 must be paid on August 31, 2013 and that the Bureau will expose the Property to a public sale on September 18, 2013. (Posted Notice, R.R. at 113a.)

.Our review in tax sale cases "is limited to determining whether the tried court abused its discretion, clearly erredas a matter of law or rendered a decision with a lack of supporting evidence.”. Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa.Cmwlth.2006). '

. Section 602(a) requires that notice be published in two newspapers of general circulation and one “legal journal, if any, designated by the court for publication of legal notices” at least thirty days prior to the scheduled sale. 72 P.S. § 5860.602(a). Section 602(e)(3) of the Law, 72 P.S, § 5860.602(e)(3), requires that the property be posted at least ten days prior to the sale. The posting of the property must be done in a manner that is "reasonable and likely to inform the taxpayer, as well as the public at large, of an intended real property sale.” In re: Upset Sale Tax Claim Bureau McKean County on September 10, 2007, 965 A.2d 1244, 1247 (Pa.Cmwlth,2009) (internal quotations omitted). Third, Section 602(e) requires notice to be sent to the owner via the mail. To meet this requirement the Bureau must, at least thirty days prior to the date of the sale, send notice by "certified mail, restricted delivery, return receipt requested, postage prepaid.” 72 P.S. § 5860.602(e)(1). If return receipt is not received from each owner
then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.
72 P.S. § 5860.602(e)(2).

. The importance of the actual envelopes was noted by the Supreme Court in a footnote wherein it stated:
We recognize that a Certificate of Mailing, USPS Form 3817, may in general be the most consistently reliable form of evidence of the date of mailing. However, under the facts of this case, where the Bureau proffered the actual envelopes mailed to Appel-lees and returned by USPS to the Bureau as undeliverable, we cannot conclude that the Bureau failed to establish "proof of mailing" merely because it did not also proffer a Certificate of Mailing.
Horton, 81 A.3d at 892 n. 12 (emphasis in original).

. Our consideration of whether the Bureau demonstrated "good cause shown” in this case is purely a matter of compliance with the statutory mandate. We will not consider whether due process requires personal service of notice because it is well established that actual notice of a tax sale obviates due process concerns. See Tracy v. Chester County Tax Claim Bureau, 507 Pa. 288, 489 A.2d 1334, 1339 (1985) (stating that "due process ... requires at a minimum that an owner of land be actually notified by government”). With actual notice, due process is satisfied regardless of whether the property owner is an owner-occupier or not. In re Return of McKean County Tax Claim Bureau of Tax Sale Held on Sept. 11, 1995, 701 A.2d 283, 286 (Pa.Cmwlth.1997). Because we concluded supra that Objector received actual notice of the September 18, 2013 upset tax sale of the Property, Objector was not deprived of due process.

. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(a). Section 402(a) provides, in relevant part:
An employe shall be ineligible for compensation for any week— > -
(a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in “employment” as defined in this act ... •

Id.

.75 Pa.C.S. § 1796(a). Section 1796(a) of the Motor Vehicle Financial Responsibility Law provides, in relevant part:
Whenever the mental or physical condition of a person is material to any claim for medica:!, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund 'for catastrophic loss claims may order the person to submit to a mental of physical examination by a physician. The order may only be made upon motion for good cause shown.

Id.

. Smith is an unreported panel decision of this Court. Pursuant to Section 414 of this Court’s Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited “for its persuasive value, but not as binding precedent.” 210 Pa.Code§ 69.414,

. Our goal in construing a statute is to "ascertain and effectuate the intention of the General Assembly.” Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). When interpreting a statute we must, where possible, resolve apparent statutory conflicts by giving effect to all provisions of the Law. Id. When the intention of the General Assembly is not apparent by the words of the statute we may consider, inter alia:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history-
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).

. The Dissent .disagrees that this • Court should apply an abuse of discretion standard in reviewing a trial court’s decision to grant a petition to waive the personal service requirement of Section 601(a)(3) of the Law. In Re: Consolidated Reports et al. (Neff), 132 A.3d 637, 658, 2016 WL 243839 (Pa.Cmwlth.2016) (Leavitt, J. dissent). The dissent posits that, because a statute contains the authority for the trial court to grant the petition, the exercise of that authority necessarily raises a question of law subject to our de novo review in every case. Id., at 658 (citing Gilbert v. Synagro Central, LLC, — Pa. -, 131 A.3d 1 (Pa.2015)). However, the General Assembly, in enacting Section 601(a)(3) of the Law, decided to neither specifically articulate the facts that must be included in a waiver petition nor delineate the efforts that must be taken by tax claim bureaus to establish good cause to justify a waiver. In interpreting other statutes and Court-issued procedural rules, which similarly empower trial courts to grant a waiver of a procedural requirement upon "good cause shown,” the courts have consistently found the issuance of these waivers should be reviewed as an abuse of discretion. See, e.g., John M., 571 A.2d at 1383; Anderson, 594 A.2d at 739; Swantner, 594 A.2d at 320. This interpretation of the statutory language was a legal question;, the answer was to inteipret the statute as establishing a discretionary exercise by the trial courts. This standard does not eliminate appellate review pf the facts and the determination that good cause was shown; however, it does not invite the appellate court to second-guess the issuance of the waiver in every appeal. •

. Objector also raises concern over the fact that the Waiver Petition was not actually signed by the Solicitor for the Bureau, but by the Director of the Bureau, who signed the attorney’s name. Objector argues that this fact, attested to by the Director of the Bureau at trial, further shows that the Bureau consciously disregarded the strict requirements of the Law. The Waiver Petition states that it was filed by the Bureau’s Solicitor, Mr. Rovi-to, and the Director of the Bureau signed Mr. Rovito’s name for him. (Waiver Petition at 1, R.R. at 6a.) However, this issue was not raised to the trial court and is, thus, waived. 777 L.L.P. v. Luzerne County Tax Claim Bureau, 111 A.3d 292, 299 n. 7 (Pa.Cmwlth.2015). We note that Objector is not asking this Court tó overturn the waiver purely on ' the basis of the petition’s signature. There is no argument that the lack of an authentic signature on a petition to waive personal ser *652 vice of notice is a basis for overturning an otherwise valid upset tax sale.

. Act of July 7, 1947, P.L, 1368, as amended, 72 P.S. § 5860.601(a)(3).

. Where the location of- the defendant is not known, the plaintiff must make a -good faith effort to locate the defendant. 2 Goodrich Amram 2d § 430(a): 1. A “good faith” effort to locate a defendant requires more than a “mere paper search” of the public records. Deer Park Lumber, Inc. v. C.B. Major, 384 Pa.Super. 625, 559 A.2d 941, 946 (1989).