## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: For Upset Tax Sale held on September 18, 2019 and October 7, 2019 | : : : | |
| | : | No. 566 C.D. 2020 |
| Appeal of: Hong Hu | : | |
| | : | |
| In Re: For Upset Tax Sale held on September 18, 2019 and October 7, 2019 | : : : | |
| | : | No. 1360 C.D. 2020 |
| Appeal of: Fuhai Li | : | Submitted: July 30, 2021 |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COVEY                                             FILED:  November 15, 2021

Hong Hu (Hu) and Fuhai Li (Li) (collectively, Appellants), pro se, appeal from the Pike County Common Pleas Court's (trial court) March 19, 2020 order denying Li's Petition for Objection or Exception to the Sale of Property at 4005 Milford Landing Drive, Milford, Pennsylvania (Property) (Petition). Essentially, the issue before this Court is whether Appellants were owner occupants of the Property at the time of the Property's upset tax sale (Tax Sale).[1]

---

[1] In their Statement of Questions Involved, Appellants present three issues: (1) whether the trial court erred by concluding that the Property was not owner occupied; (2) whether the trial court erred by concluding that Li had actual notice of the Tax Sale; and (3) whether the trial court erred by concluding that the Tax Sale notice was properly posted at the Property. *See* Appellants' Br. at 2-3.  Because determining whether Appellants were owner occupants of the Property is dispositive, this Court will address only that issue herein.

Initially, "the collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). This Court has explained:

> A property owner's right to notice "prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States [(U.S.)] Constitution[, U.S. Const. amend. XIV, § 1,] and by the [Real Estate Tax Sale Law (RETSL)[2]]." *Rice v. Compro Distrib[.], Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The [U.S.] Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:
>
>> [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.
>
> *Jones v. Flowers*, 547 U.S. 220 . . . (2006). Due process is satisfied when the [tax claim b]ureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent[.] Hanover Bank & T[r.] Co.*, 339 U.S. 306 . . . (1950)).

*In re Consol. Reps. & Return by the Tax Claim Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (*en banc*) (*Appeal of Neff*).

Section 602(e)(1) of the RETSL requires a tax claim bureau to provide notice of a tax sale "[a]t least thirty (30) days before the date of the sale, by [U.S.] certified mail, restricted delivery, return receipt requested, postage prepaid, to each

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

owner as defined by [the RETSL]." 72 P.S. § 5860.602(e)(1).  Section 602(a) of the

RETSL also specifies:

> At least thirty (30) days prior to any scheduled sale[,] the [tax claim] bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices.  Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. § 5860.602(a).  Section 602(e)(3) of the RETSL also mandates that "[e]ach

property scheduled for sale shall be posted at least ten (10) days prior to the sale."

72 P.S. § 5860.602(e)(3).

Relative to owner-occupied[3] properties exposed to tax sale, Section

601(a)(3) of the RETSL further declares:

> **No owner occupied property may be sold unless the [tax claim] bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff** . . . .  The sheriff . . . shall make a return of service to the [tax claim] bureau . . . setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served.  **If such personal notice cannot be served within twenty-five (25) days of the request by the [tax claim] bureau to make such personal service**, **the [tax claim] bureau may petition the [trial court] to waive the requirement of personal notice for good cause shown**.  Personal service of notice on one of the owners shall be deemed personal service on all owners.

---

[3] Section 102 of the RETSL defines *owner occupant* as "the owner of a property which has improvements constructed thereon and for which the annual tax bill is mailed to an owner residing at the same address as that of the property."  72 P.S. § 5860.102.

3

72 P.S. § 5860.601(a)(3) (emphasis added); *see also Montgomery Cnty. Tax Claim Bureau v. Queenan*, 108 A.3d 947, 951 (Pa. Cmwlth. 2015) ("[N]otice . . . *must be personally served* on an owner[]occupier of real property at least [10] days prior to the date of actual sale . . . ."). "The requirements of Section 601(a)(3) [of the RETSL] are cumulative and apply in addition to the tax claim bureaus' obligations to provide notice through publications, posting, and mail." *Appeal of Neff*, 132 A.3d at 645-46.

This Court has ruled that "[t]he [RETSL's] notice provisions are to be strictly construed, and a tax claim bureau's failure to comply with all of the notice requirements ordinarily nullifies a tax sale." *Montgomery Cnty. Tax Claim Bureau*, 108 A.3d at 950. Accordingly,

> ["]the [tax claim b]ureau has the burden of proving compliance with the statutory notice provisions of the [RETSL]." *In re Tax Sale of Real Prop*[.] *Situated in Jefferson T*[*wp.*], 828 A.2d 475, 478 (Pa. Cmwlth. 2003)[,] *aff'd*, . . . 859 A.2d 471 ([Pa.] 2004). [Although a] presumption of regularity attaches to tax sales[,] . . . a property owner can overcome this presumption by challenging the sale based on the agency's non-compliance with statutory tax sale requirements. *In re 1999 Upset Sale of Real Estate*, 811 A.2d 85, 88 (Pa. Cmwlth. 2002).

*Dwyer v. Luzerne Cnty. Tax Claim Bureau*, 110 A.3d 223, 225-26 (Pa. Cmwlth. 2015).

**Facts**

Appellants, husband and wife, are the Property's record owners. Appellants and their daughters resided at the Property after Appellants purchased it in 2011. *See* Original Record, January 24, 2020 Notes of Testimony (N.T.) at 134; *see also* N.T. Pike County Tax Claim Bureau (Bureau) Ex. 2. The Property's address

- 4005 Milford Landing Drive - is Appellants' mailing address, and is the address at which Appellants have received the Bureau's annual Property tax bills.

In 2018, Hu began staying at Appellants' property located at 146 Rising Meadow Way, East Stroudsburg, Pennsylvania, during the week to be closer to her job, but she regularly returned to and continued to reside at the Property. *See* N.T. at 13-15, 30-32. In addition, on July 11, 2018, the U.S. Marshals Service took Li into federal custody.[4] Li was originally held in the Lackawanna County Prison, and then was transferred to the Federal Correctional Institution (FCI)-McKean in Bradford, Pennsylvania, on May 24, 2019.

On March 20, 2019, the Bureau sent a Notice of Return and Claim to Appellants at the Property's address notifying them of a claim for unpaid 2017/2018 real estate taxes, and that their failure to pay the taxes could result in the Property being sold without their consent. *See* N.T. at 56-57; *see also* N.T. Bureau Ex. 1 at 13.

On April 9, 2019, the Bureau sent separate Notices of Return and Claim by first-class and certified mail to Li and Hu at the Property's address. *See* N.T. at 57-59; *see also* N.T. Bureau Ex. 1 at 1-4. Both certified mailings were returned to the Bureau. *See* N.T. at 57-60; *see also* N.T. Bureau Ex. 1 at 2, 4. Li's return receipt was marked "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," "UNABLE TO FORWARD." N.T. Bureau Ex. 1 at 2. Hu's return receipt was marked "RETURN TO SENDER," "UNCLAIMED," "UNABLE TO FORWARD." N.T. Bureau Ex. 1 at 4. The first-class mailings were not returned to the Bureau. *See* N.T. at 59.

On May 22, 2019, the Bureau conducted an internet search via TruePeopleSearch.com for Appellants' addresses, and confirmed that the Property's

---

[4] Li granted Hu his power-of-attorney while he was incarcerated, which gave her authority to act on his behalf. *See* N.T. at 33-34, 45, 125, 156-157.

address was the current mailing address for both of them.[5]  *See* N.T. at 60-61; *see also* N.T. Bureau Ex. 1 at 5-8.  That same day, the Bureau sent updated Notices of Return and Claim via first-class mail to Li and Hu.[6]  *See* N.T. at 62, 101.  Although Li's Notice of Return and Claim was eventually returned to the Bureau marked "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," "UNABLE TO FORWARD," N.T. Bureau Ex. 1 at 9, Hu's was not returned to the Bureau.  *See* N.T. at 61, 101; *see also* N.T. Bureau Ex. 1 at 9-11.

On July 18, 2019, the Bureau posted a Notice of Return and Claim and a Notice of Public Tax Sale at the Property.  *See* N.T. at 62-63; *see also* N.T. Bureau Ex. 1 at 12.  The Notice of Public Tax Sale specified that the Property would be sold on September 18, 2019.  *See* N.T. Bureau Ex. 1 at 14, 19.  Hu saw the posting of the impending Tax Sale notices on the Property at the end of July 2019, and informed Li,[7] who instructed Hu to contact his criminal defense counsel and the Bureau.  *See* N.T. at 15-17, 23, 35, 42-43, 51-52, 144, 149-154.

On July 25, 2019, the Bureau sent a Notice of Public Tax Sale to Hu by first-class and certified mail restricted delivery.  *See* N.T. Bureau Ex. 1 at 19-21.  The certified mailing was returned to the Bureau marked "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," "UNABLE TO FORWARD," N.T. Bureau Ex. 1 at 20, but the first-class mailing was not returned to the Bureau.  N.T. at 66, 101.

On July 30, 2019, the Bureau sent a Notice of Public Tax Sale to Li by first-class and certified mail.  *See* N.T. Bureau Ex. 1 at 14-16.  The first-class mailing was returned to the Bureau marked "RETURN TO SENDER," "NOT DELIVERABLE AS

---

[5] TruePeopleSearch.com listed 146 Rising Meadow Way, East Stroudsburg, Pennsylvania, as an address for Hu and Li in "Jul[y] 2012."  N.T. Bureau Ex. 1 at 6, 8.

[6] The Notices of Return and Claim contained updated tax amounts due, including accrued interest and fees.  *See* N.T. at 62.

[7] Li claimed Hu informed him of the Tax Sale in August 2019, but he was not aware at that time that the Tax Sale had actually been scheduled.  *See* N.T. at 151-154.

ADDRESSED," "UNABLE TO FORWARD," N.T. Bureau Ex. 1 at 17, and the certified mailing was returned to the Bureau "RETURN TO SENDER," "ATTEMPTED - NOT KNOWN," and "UNABLE TO FORWARD." N.T. Bureau Ex. 1 at 15.

The Bureau advertised the Property's Tax Sale in the August 8, 2019 Pike County Dispatch, the August 9, 2019 Pike County Legal Journal, and the August 10, 2019 News Eagle. *See* N.T. at 68; *see also* N.T. Bureau Ex. 1 at 29-35.

On August 13, 2019, the Bureau conducted an internet search for Appellants on Advanced Person Search, which confirmed that their current mailing address was the Property's address.[8] *See* N.T. at 67-68; *see also* N.T. Bureau Ex. 1 at 24-28. Because the Advanced Person Search reflected an additional 2019 address for Li at 200 Third Street, Milford, Pennsylvania, on August 14, 2019, the Bureau sent a Notice of Public Tax Sale to Li by first-class mail to that address, but it was returned to the Bureau marked "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," "UNABLE TO FORWARD." *See* N.T. Bureau Ex. 1 at 17. The returned first-class mailing envelope contained a handwritten notation that the Bureau checked Li's voter registration records, but found "nothing different." *See* N.T. at 65; *see also* N.T. Bureau Ex. 1 at 17.

On September 3 and 4, 2019, the Pike County Sheriff attempted to serve Li and Hu with the Notice of Public Tax Sale at the Property on three different occasions, but the Sheriff's return affidavit reflected that personal service was not obtained. *See* N.T. at 70, 98; *see also* N.T. Bureau Ex. 1 at 37-38. The Bureau did not seek to have the personal service requirement waived.

Hu called the Bureau office twice on September 9, 2019. The first time, Hu provided the Bureau her cell phone number; the second time, she spoke to Paula[9]

---

[8] Advanced Person Search listed 146 Rising Meadow Way, East Stroudsburg, Pennsylvania, as a previous address for Li from "Jul[y] 2006-2019," N.T. Bureau Ex. 1 at 24, and as a previous address for Hu from "Jul[y] 2006-2018." N.T. Bureau Ex. 1 at 26.

[9] Paula's last name is not included in the record.

who informed Hu that since the Property is in her name, she was responsible for paying the taxes or the Property would be sold. *See* N.T. at 68-69; *see also* N.T. Bureau Ex. 1 at 36. On September 12, 2019, Hu notified Bureau Director Cynthia Gehris (Gehris) that the federal government had seized the Property and Hu wanted to enter into a payment agreement but, when Gehris quoted the amount and referenced a two-year agreement, Hu declined. *See* N.T. at 26, 36, 69-70, 92, 95, 164-165; *see also* N.T. Bureau Ex. 1 at 36.

The Tax Sale of the Property was held on September 18, 2019, and was continued to October 7, 2019. *See* N.T. at 39, 70-72. On October 7, 2019, Tore Properties, LLC (Tore Properties) purchased the Property at the Tax Sale for $23,518.59.[10] *See* N.T. at 70-72; *see also* N.T. Bureau Ex. 1 at 39.

By notice dated October 9, 2019, the Bureau sent Hu a post-Tax Sale notice by certified and first-class mailings. *See* N.T. at 76, 107; *see also* N.T. Bureau Ex. 1 at 44-48. Also, on or about October 9, 2019, Gehris reviewed the properties sold on October 7, 2019, and made the connection to a newspaper article she had read previously about a Li who had been incarcerated. Gehris then searched prison records, located Li's address, and sent the post-Tax Sale notice to Li by first-class and certified mail at FCI-McKean. *See* N.T. at 74-75, 82-84, 114, 122, 144-145; *see also* N.T. Bureau Ex. 1 at 40-43.

On November 18, 2019, Li filed the Petition, alleging therein that, because he is an owner occupant of the Property, the Bureau was required to personally serve him with notice of the Tax Sale. However, Li did not serve the Petition on the Board. *See* Trial Ct. Order at 1. Also on November 18, 2019, the Bureau filed a Petition for Confirmation Nisi, which the trial court granted on

---

[10] The $23,518.59 is the total of the $21,000.00 purchase price, plus an $83.75 recording fee, a $5.50 prothonotary fee, a $25.00 deed preparation fee, a $1,202.17 state transfer tax, and a $1,202.17 local transfer tax. *See* N.T. at 117.

8

November 19, 2019. *See* N.T. at 72. Unaware that Li had filed the Petition, the Bureau recorded the Property's deed on November 21, 2019. *See* N.T. at 72-73.

On January 24, 2020, the trial court conducted a hearing.[11] At the hearing, Tore Properties filed a Motion to Intervene, which the trial court granted. *See* N.T. at 4, 6. On March 19, 2020, the trial court denied the Petition and confirmed the Tax Sale, declaring that Li and Hu had actual notice of the Tax Sale. *See* Appellants' Br. Ex. B (Trial Ct. Order) at 2, 4-7. Li and Hu filed separate appeals in this Court.[12]

## Discussion

Appellants argue that they are the owner occupants of the Property and, therefore, the Bureau was required to notify them of the Tax Sale by personal service. This Court agrees.

It is undisputed in the instant matter that the Bureau timely published and posted notices of the impending Tax Sale, and that the Bureau sent certified and first-class mailings to Appellants at their record address at the Property. However, if a property is owner occupied, "notwithstanding whether a taxpayer received actual notice, the Bureau must [*also*] demonstrate that it *personally served notice* on any owner[]occupant of the [p]roperty subject to the upset tax sale *or obtained a waiver*

---

[11] Li participated in the hearing by telephone from FCI-McKean.

[12] "This [C]ourt's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion." *City of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017) (quoting *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)). "Statutory interpretation is a question of law over which our standard of review is *de novo*, and our scope of review [is] plenary." *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Lab. & Indus., Bureau of Lab. Law Compliance*, 162 A.3d 384, 389 (Pa. 2017).

Hu's appeal was docketed at No. 566 C.D. 2020. Li's appeal was docketed at No. 1360 C.D. 2020. However, this Court consolidated the appeals on March 30, 2021.

of personal service from the trial court." *Appeal of Neff*, 132 A.3d at 646 (emphasis added).

Substantial record evidence supports that Appellants had received the Property's tax bills at the Property since 2011; the Property is listed as Appellants' current address on the internet, by the Recorder of Deeds and the tax assessment office, and they have never provided the Bureau with an alternate address; although, beginning in 2018, Hu stayed in East Stroudsburg during the week for her job, she did not officially move from the Property until October or November 2019; Hu was at the Property almost daily during the summer of 2019; and, based on its belief that Appellants lived at the Property, the Bureau made three attempts to personally serve notice on Appellants at the Property in September 2019.[13] Notably, in its brief to the trial court, the Bureau admitted that Hu was an owner occupant of the Property.[14]

In addition, Li resided at the Property until he was incarcerated in July 2018. This Court ruled in *In Re Appeal of Hansford*, 218 A.3d 995 (Pa. Cmwlth. 2019), that incarceration does not change an owner occupant's status. The *Hansford* Court reasoned:

> The fact that an owner may be temporarily physically incapable of inhabiting his property [due to his incarceration] does not mean he is no longer an owner occupant. . . . Consequently, this Court concludes that,

---

[13] In determining that Appellants were not owner occupants, the trial court relied on the following facts: "Hu testified that at the time of the hearing, she resided in East Stroudsburg, Pennsylvania, not [at] the Property. Hu also indicated she returned to the Property on weekends in order to retrieve mail sent to the Property, but that ended in October or November of 2019." Trial Ct. Order at 4. However, where Hu resided at the time of the January 2020 hearing is irrelevant when analyzing whether the Property was owner occupied in 2018 and 2019. And, Hu's testimony that she returned to the Property on weekends to retrieve mail until October or November of 2019 was alone insufficient to support the trial court's conclusion that the Property was not owner occupied.

[14] The Bureau declared: "[I]t is undisputed that the only owner occupant of the subject [P]roperty, Hu, received actual notice of the sale . . . when she read the posted Notice of [Public Tax] Sale on her garage." Appellants' Br. Ex. 1 (Bureau Trial Ct. Br.) at 7.

10

> although [Li] was physically incapable of inhabiting the Property at the relevant time period, he is an owner occupant under the RETSL.

*Id.* at 1001-02 (footnote omitted). Accordingly, the record evidence supports, and this Court concludes, that Hu and Li were owner occupants of the Property.

## Conclusion

Because as owner occupants, Appellants were entitled to personal service of written notice of the Tax Sale, and the Bureau did not personally serve them with such notice or seek a waiver of that requirement, the Tax Sale was invalid.[15]

Based on the foregoing, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

---

[15] Because the Property was owner occupied and the Bureau did not personally serve Appellants, or seek a waiver, pursuant to Section 601(a)(3) of the RETSL, the Property could not be sold at Tax Sale. Therefore, this Court need not address Appellants' remaining issues - whether Li had actual notice of the sale or whether it was properly posted at the Property.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: For Upset Tax Sale held on September 18, 2019 and October 7, 2019     :
:
:
:
:    No. 566 C.D. 2020

Appeal of: Hong Hu     :
:

In Re: For Upset Tax Sale held on September 18, 2019 and October 7, 2019     :
:
:
:
:    No. 1360 C.D. 2020

Appeal of: Fuhai Li     :

## O R D E R

AND NOW, this 15th day of November, 2021, the Pike County Common Pleas Court's March 19, 2020 order is reversed.

_____
ANNE E. COVEY, Judge