IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brodhead Creek Associates, LLC, :
     Appellant :
       : No. 1251 C.D. 2018
   v.    :
       : Argued: December 12, 2019
County of Monroe, Tax Claim Bureau :
of Monroe County, and Marek :
Tchorzewski    :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH       FILED: May 8, 2020


    Brodhead Creek Associates, LLC (Brodhead)[1] appeals from the August 8, 2018 order of the Court of Common Pleas of Monroe County (trial court) denying Landowner's amended petition to set aside the May 24, 2017 judicial sale of his property for unpaid 2014 taxes.  In its decision, the trial court found that Landowner had received actual notice of the sale and was given the opportunity to lodge an objection to the judicial sale, but failed to do so.


## Background

    Brodhead, a Pennsylvania limited liability company, has a mailing address of P.O. Box 313, Henryville, Pennsylvania 18332.  (Finding of Fact (F.F.) No. 1.)  By deed dated March 6, 2014, Brodhead acquired a 3.485-acre parcel of property

---

[1] Brodhead is managed by Alfred Villoresi (Landowner) and his actions on behalf of Brodhead are presently at issue.

(Property) in Price Township, Monroe County, Pennsylvania. *Id.* The Property was used as a hunting and fishing attraction. (Reproduced Record (R.R.) at 27a, Notes of Testimony (N.T.) at 7.) On numerous occasions Landowner failed to pay taxes associated with the Property, and the instant controversy concerns the unpaid taxes and notices thereof under the Real Estate Tax Sale Law (RETSL).[2] We begin by recounting the record evidence surrounding Brodhead's unpaid taxes.

In 2014, Landowner failed to pay school taxes. (R.R. at 85a.) As a result, on February 17, 2015, Landowner received a letter notifying him that his taxes had been returned,[3] as unpaid, to the Tax Claim Bureau of Monroe County (Bureau). *Id.* Subsequently, on April 28, 2015, Landowner received a notice of return and claim[4] for the unpaid 2014 taxes (Notice 1). (R.R. at 86a.) Notice 1 included a warning which stated:

> WARNING IF YOU FAIL TO PAY THIS CLAIM OR FAIL TO TAKE LEGAL ACTION TO CHALLENGE THIS CLAIM, YOUR PROPERTY WILL BE SOLD WITHOUT YOUR CONSENT AS PAYMENT FOR THESE TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU PAY THIS CLAIM BEFORE JULY 1, 2016, YOUR PROPERTY WILL NOT BE SOLD. IF YOU PAY THIS CLAIM AFTER JULY 1, 2016, BUT BEFORE [THE] ACTUAL SALE, YOUR PROPERTY WILL NOT BE SOLD BUT WILL BE LISTED ON ADVERTISEMENTS FOR SUCH SALE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL YOUR ATTORNEY,

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803

[3] When taxes go unpaid, a return is made by a tax collector to the tax claim bureau listing all properties on which taxes were levied and remain unpaid. Section 306(a) of RETSL, 72 P.S. §5860.306(a).

[4] *See* Section 308(a) of RETSL, 72 P.S. §5860.308(a).

2

THE TAX CLAIM BUREAU AT (570) 517-3172 OR THE COUNTY LAWYER REFERRAL SERVICE AT (570) 424-7288.

*Id*. (emphasis in original).

Landowner again failed to pay taxes in 2015. (R.R. at 87a.) At that time Landowner had still failed to pay the delinquent 2014 taxes originally identified in Notice 1. *Id*. On April 21, 2016, Landowner received another notice of return and claim (Notice 2), which advised him, in relevant part, "IF YOU PAY THIS CLAIM BEFORE JULY 1, 2017, YOUR PROPERTY WILL NOT BE SOLD. IF YOU PAY THIS CLAIM AFTER JULY 1, 2017, BUT BEFORE [THE] ACTUAL SALE, YOUR PROPERTY WILL NOT BE SOLD BUT WILL BE LISTED ON ADVERTISEMENTS FOR SUCH SALE." (R.R. at 88a) (emphasis in original). Notice 2 showed all taxes that were unpaid for 2014 and 2015. *Id*.

By notice from the Bureau dated April 30, 2016, Landowner received notice of an upset tax sale (Upset Sale Notice), warning him that the Property would be put up for sale on September 14, 2016, (R.R. at 89a); however, the Property did not sell. On January 11, 2017, the Bureau petitioned the trial court to approve a judicial sale because of the taxes identified as delinquent in Notice 1. (Finding of Fact (F.F.) No. 4.) The trial court issued a rule to show cause on January 12, 2017, as to why the Property should not be sold, and set a hearing for April 3, 2017. (F.F. No. 5.) Landowner received notice of the sale but did not file an objection or attend the hearing. (F.F. No. 6.)

Landowner failed to pay taxes related to the Property for the year 2016. (R.R. at 92a.) On April 14, 2017, Landowner received a notice of return and claim (Notice 3), which advised him, in relevant part, "IF YOU PAY THIS CLAIM BEFORE JULY 1, 2018, YOUR PROPERTY WILL NOT BE SOLD. IF YOU PAY

3

THIS CLAIM AFTER JULY 1, 2018, BUT BEFORE [THE] ACTUAL SALE, YOUR PROPERTY WILL NOT BE SOLD BUT WILL BE LISTED ON ADVERTISEMENTS FOR SUCH SALE." (F.F. No. 11, R.R. at 93a) (emphasis in original). This notice showed all delinquent taxes owed for 2014, 2015, and 2016. *Id.* Landowner took Notice 3 to the Bureau office on April 14, 2017, and asked if the Property would be sold in accordance with Notice 3, and after reviewing Notice 3, the Bureau clerk told him that the Property would not be sold until 2018. (F.F. No. 11.) However, because Landowner's *2014 taxes remained unpaid*, the Property was sold at judicial sale on May 24, 2017, to Marek Tchorzewski (Mr. Tchorzewski). (F.F. No. 9, R.R. at 12a.)

On June 29, 2017, Landowner filed an amended petition to set aside the judicial sale. (R.R. at 2a-4a.) Mr. Tchorzewski responded to the amended petition on July 24, 2017. (R.R. at 15a-17a.) On January 19, 2018, the Bureau answered the amended petition. (R.R. at 11a-12a.) A hearing was set, and was subsequently held on whether the judicial sale should be set aside. (R.R. at 24a.)

Landowner testified at the hearing. Landowner testified that he received notice that his Property was going to be sold in the spring of 2017 as the result of his taxes that he failed to pay in 2014. For clarity we will refer to Landowner's actual notice as "Judicial Sale Notice."[5] Landowner also testified that he received Notice 3

---

[5] The pertinent portions of the record reflect as follows:

> [1] Q. Now, you had received notice that the [P]roperty was subject to -- or basically had taxes that were due and owing; is that right?
> A. Yes.

(R.R. at 35a, N.T. at 15.)

> [2] A. I then received information that there was going to be a judicial sale of the [P]roperty.

(R.R. at 38a, N.T. at 18.)

4

and that he took Notice 3 to the Bureau, showed it to an employee, and asked "[i]s my Property going to be sold now as I had [sic] been threatened or do I really have until July 1st, 2018?" (R.R. at 39a, N.T. at 19.) Landowner maintained that he was told that his Property would not be sold until 2018. *Id.* Landowner testified that based on that statement he did not pay his delinquent taxes. *Id.* Landowner stated that he learned the Property was sold in early June of 2017. (R.R. at 28a, N.T. at 8.)

On August 8, 2018, the trial court issued an order denying Landowner's petition to set aside the May 24, 2017 judicial sale. (Trial court op. at 8.) In denying the petition, the trial court concluded that Landowner had admitted to receiving the Judicial Sale Notice, which set the date of sale for May 24, 2017. Again, the sale was precipitated by Landowner's failure to pay his 2014 taxes as identified in Notice 1. *Id.* at 5. Even though Landowner had this knowledge, he did not contest the judicial sale. *Id.* The trial court concluded that, after the May 24, 2017 judicial sale was set, Landowner received Notice 2 (for his failure to pay 2015 taxes) and Notice 3 (for his failure to pay 2016 taxes). *Id.* The court explained that even though Landowner

_____

[3] Q. You acknowledge you knew that the judicial sale was going to occur in the spring of 2017; correct? You said that on direct.
A. Yeah.
Q. Okay. And you had notice of it. And everything was sent -- in the deed that you -- when you got this [P]roperty, did you give an address where you wanted the taxes sent to and all notices sent to?
A. I got them.
Q. Okay. Was that P.O. Box 313, Henryville, P.A. 18332?
A. Yes.
Q. And that is the address where the Tax Claim Bureau was shown that it was sent to, the notice of the hearing for the judicial sale; correct?
A. I knew about the judicial sale. I must have got something.
(R.R. at 40a-41a, N.T. at 20, 21.)

showed the Bureau clerk Notice 3 stating his Property would not be sold before July 1, 2018, and was told that the Property would not be sold until the following year, his rights were not violated. *Id*. at 6. The trial court reasoned that Landowner testified that he knew of the impending May 24, 2017 judicial sale which was the result of his failure to pay his 2014 taxes as identified in Notice 1, but only provided Notice 3 to the Bureau clerk when he asked for clarification. Specifically, the trial court determined that because Landowner only presented the Bureau's clerk with some, but not all of, the information he had, the Bureau clerk's statement did not warrant the sale to be set aside. *Id*. at 7.[6] Following the trial court's decision, Landowner appealed to this Court.

## Discussion

On appeal,[7] Landowner raises the issue of

[w]hether the trial court erred as a matter of law and/or abused its discretion where it failed to set aside a judicial tax

---

[6] The trial court also found that Landowner paid 2017-2018 school taxes in the amount of $1,175.83 and Monroe County and Price Township 2017 real estate taxes in the amount of $167.58 on December 18, 2017. (F.F. No. 7 n.1.) It further found that Landowner paid 2018 County and Township taxes in the amount of $149.31 on March 30, 2018. *Id*. The trial court found that these payments were made to the tax collector after this action was commenced on June 29, 2017. *Id*.

We pause to address Factual Finding number 7, note 1. We question how the taxing authorities in Monroe County allowed taxes to be collected from Landowner after the judicial sale. Although Landowner paid these taxes to the tax collector, the tax collector and the Bureau should have been aware that the Property was sold and advised Landowner of the same. When it comes to the collection of taxes, it is imperative that the right hand knows what the left hand is doing, meaning, the Bureau and the tax collector both should have been aware of the sale of the Property. Moreover, counsel for Mr. Tchorzewski recognized that it was his client's responsibility to pay taxes after the sale. (R.R. at 33a, N.T. at 13.)

[7] "Our review in tax sale cases is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." *In re Consolidated Reports and Return by the Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 643 n.12 (Pa. Cmwlth. 2016) (internal citations omitted).

6

sale where the property owner went in person to the [Bureau] with questions regarding a notice of a return and claim and was told by the [Bureau] that its property would not be sold until July 1, 2018, but the Property was in fact sold on May 24, 2017, more than one year earlier?

(Landowner's Br. at 4.) In support, Landowner argues that the trial court's decision should be reversed because (1) Landowner was given erroneous advice by the Bureau clerk, and (2) the Bureau's notices were confusing. The main thrust of Landowner's argument is that when the Bureau's clerk told him his Property could not be sold until after July 1, 2018, he was misled and his due process rights were violated because the Property was subsequently sold at a judicial sale. Landowner alleges that he was not afforded the due process that is required for a tax sale. Landowner relies on our Supreme Court's decision in *Geier v. Tax Claim Bureau of Schuylkill County*, 588 A.2d 480 (Pa. 1991), for the proposition that even if the Bureau complied with the notice requirements of RETSL, due process may not have necessarily been afforded. Landowner maintains that although RETSL was followed, the allegedly confusing notices and erroneous advice deprived him of his due process rights.

Second, Landowner relies on *Weber v. Clearfield County Tax Claim Bureau* (Pa. Cmwlth., No. 635 C.D. 2015, filed January 7, 2016) (unreported).[8] Landowner argues that in *Weber*, this Court implied that a taxpayer's reasonable reliance on the tax claim bureau's misstatements may give rise to a due process violation. Landowner maintains that when the Bureau's clerk told him that his Property would not be sold until July 1, 2018, he was misled, and thus under *Weber*, his due process rights were violated.

---

[8] *Weber* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

7

The County, Bureau, and Mr. Tchorzewski (collectively, Appellees) argue that the notices complied with RETSL, and that taken as a whole, are not confusing. Also, Appellees argue that any misleading statement on part of the Bureau was due to Landowner's failure to provide the Bureau clerk with all the information necessary to enable the clerk to formulate an accurate response to his question.

## I.     The Bureau's Statement to Landowner

"The prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). Due process is implicated in any taking of property for the collection of taxes. *Sampson v. Tax Claim Bureau of Chester County*, 151 A.3d 1163, 1167 (Pa. Cmwlth. 2016). RETSL is for the collection of taxes and is not intended to create investment opportunities for others, or to strip taxpayers of their properties. *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038, 1043 (Pa. Cmwlth. 2018). The United States Supreme Court has explained,

> People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220, 234 (2006). Our focus is not on the neglect of the owner, though it is often present to some degree, but rather whether the Bureau's activities comply with the requirements of RETSL. *Jenkins*, 176 A.3d at 1043 (citing *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003)). "At a minimum, due process requires that if reasonably possible, a government must

8

notify an owner before his property is sold at an upset tax sale." *In re Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d 475, 479 (Pa. Cmwlth. 2003) (citing *Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878 (Pa. Cmwlth. 2001)), *aff'd*, 859 A.2d 471 (Pa. 2004)). However, "even technical compliance with the statute may not always satisfy the demands of due process since [RETSL] states the minimum effort to be done by a tax claim bureau." *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (emphasis omitted) (citing *In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes,* 105 A.3d 76, 83 (Pa. Cmwlth. 2014)).

With these general principles in mind, we turn to the assertion that Landowner was given erroneous advice by the Bureau. Landowner failed to pay his taxes in 2014, and subsequently received Notice 1. Landowner failed to pay his taxes in 2015 and 2016 and, thus, received Notices 2 and 3. At some point after receiving Notice 2, Landowner received the Upset Sale Notice stating that the Property would be sold at an upset tax sale due to Landowner's failure to pay his 2014 taxes in accordance with Notice 1. Because the Property did not sell at the upset tax sale, a judicial sale was approved, and Landowner received the Judicial Sale Notice. In other words, Landowner had **<u>actual</u>** notice that his Property was set for judicial sale due to his failure to pay his 2014 taxes. Because Landowner failed to pay his 2014 taxes, the Property sold on May 24, 2017.

On appeal, Landowner argues that he was misled by the clerk who told him, based on Notice 3, that the sale of his Property would not take place until July 1, 2018. However, like the trial court, we do not believe that Landowner's contention that he was "misled" passes muster. First, as the trial court observed, Landowner

9

presented the Bureau clerk Notice 3 and asked the clerk a question specifically related to Notice 3, which (1) pertained to Landowner's failure to pay his 2016 taxes; and (2) contained a July 1, 2018, deadline to pay his 2016 taxes or risk a tax sale. Landowner did not testify that he asked the clerk whether the already-scheduled May 24, 2017 sale would still take place despite the information contained in Notice 3. Rather, the testimony reflects that Landowner handed the clerk Notice 3 and asked the clerk a question specific to the language contained in Notice 3, which the clerk answered. We are not placing any blame on Landowner. However, we must look at the clerk's conduct in light of what actually happened. Had Landowner mentioned the already-scheduled May 24, 2017 sale to the clerk, the clerk's answer may have been different.

Second, Landowner admitted that he received the Judicial Sale Notice setting the sale of his Property for May 24, 2017, for his failure to pay his **2014 taxes**. By all accounts, Landowner did not receive any communication from the court canceling or postponing the sale. Nor would it have been reasonable for Landowner to assume that an already-scheduled sale (due to delinquent 2014 taxes) would be cancelled simply because Landowner thereafter failed to pay his subsequent year's taxes (*i.e.*, 2015 and 2016 taxes). Thus, we must agree with the trial court that **regardless of what the Bureau clerk told him**, Landowner had actual notice that his Property would be sold on May 24, 2017, due to his failure to pay his 2014 taxes. Despite the clerk's statements, it was unreasonable for Landowner to assume that the already-scheduled May 24, 2017 tax sale would be put off until at least July 1, 2018, simply because he persisted, year after year, in failing to pay his taxes. If we were to accept Landowner's argument, each time he failed to pay taxes, the tax sale would be postponed, in accordance with the most recent notice. We find that this was an unreasonable interpretation of Notice 3. A taxpayer could avoid paying taxes *ad*

10

*finitum* despite having received notice of a scheduled sale due to his failure to pay taxes in a prior year.

In *Thayer v. Tax Claim Bureau of Bucks County*, 701 A.2d 808 (Pa. Cmwlth. 1997), this Court addressed the reasonableness of a taxpayer's reliance on a bureau employee's misstatement taking into account what the taxpayer actually knew. In *Thayer*, the taxpayer's property was scheduled to be sold at a tax sale on November 13, 1995. *Id*. at 809. However, due to an order of the common pleas court, the sale was stayed until December 11, 1995, so long as the taxpayer paid the delinquent taxes. *Id*. However, the taxpayer did not pay his delinquent taxes in time. *Id*. The taxpayer's wife called the tax claim bureau and spoke with an employee who erroneously informed her that an agreement had been entered into between the bureau and the taxpayer, and the property would not be sold at the scheduled sale. *Id*. However, no such agreement existed and the taxpayer was well aware of that, because the taxpayer would have knowledge if he had, in fact, entered into such an agreement. Contrary to the bureau employee's statement, the property was sold as scheduled. *Id*.

The taxpayer sought to set aside the tax sale on the basis of equitable estoppel, claiming that the tax claim bureau had misrepresented that there was an agreement delaying the sale. *Id*. The common pleas court concluded that any reliance on the employee's statement was unreasonable, because the taxpayer was aware that the property would be sold on December 11, 1995, if the taxes were not paid. *Id*. Furthermore, the common pleas court found that if the agreement mentioned by the employee actually existed, the taxpayer would have had to been aware of the agreement, and have been a party to the agreement. *Id*. However, the Court found that because there was no agreement the taxpayer's belief was unreasonable. *Id*. We

11

concluded that the bureau employee's statement alone failed to meet the burden of proving the taxpayer's reasonable reliance on the statement. *Id.* at 810.

Here, Landowner cannot claim reasonable reliance on the Bureau clerk's statement in regard to Notice 3 because he had actual notice that the Property would be sold as the result of his failure to pay his 2014 taxes, as identified in Notice 1, and that the May 24, 2017 judicial sale was going to occur, and he did not receive notice or information to the contrary.

*Geier* is of no assistance to Landowner, nor is it applicable to these facts. In *Geier*, property was exposed to a tax sale for delinquent taxes. 588 A.2d 481. The property was owned by Hilda Geier and Colitz Coal Company. *Id.* The property sold, and Geier and the Colitz Coal Company filed an action to set aside the sale due to noncompliance with the provisions of RETSL, specifically, section 602 of RETSL, 72 P.S. §5860.602. *Id.* However, the common pleas court ordered the property to be sold to the third-party purchaser finding that the tax claim bureau had complied with the provisions of RETSL and notice was appropriately given to the coal company. *Id.* The common pleas court concluded that Geier was not entitled to notice because she was not in "visible, apparent possession of the property." *Id.* at 482. In other words, the common pleas court concluded that even though the tax claim bureau was aware of Geier's record ownership, she was not in apparent possession of the property, and thus she was not entitled to notice. Our Supreme Court reversed, concluding that even though the tax claim bureau complied with the law, because the tax claim bureau had the names of both owners in its records, but only sent one notice, it did not make a reasonable effort to notify all owners. *Id.* at 483. *Geier* is factually distinguishable from the instant matter, because, unlike here, it did not concern allegedly misleading advice or allegedly confusing language.

12

In *Weber*, this Court affirmed the common pleas court on the basis of its opinion. There, the common pleas court concluded that under *In Re Sale of Vacant Land (186.57 Acres) on Powerhouse Road (Appeal of Clover Ridge Lodge, Inc.)* (Pa. Cmwlth., No. 486 C.D. 2014, filed December 8, 2014) (unreported), a taxpayer is entitled to pay taxes after the property has been sold at a tax sale, but before the purchaser pays the full price. *Weber*, slip op. at 4. The Court concluded that because Hayes Y. Weber showed up at the tax claim bureau after the sale, but before the sale purchaser had paid, with a certified check in the amount owed, the tax claim bureau should have accepted her payment. *Id.*, slip op. at 7. Additionally, the Court concluded that the sale could have been voided because the tax claim bureau provided Weber with confusing directions. *Id.* *Weber* differs from the facts before us, because *Weber* involved a taxpayer's right to pay his or her delinquent tax liability after sale, but before the purchaser makes full payment.

*Weber* is also distinguishable because, there, the common pleas court concluded that the sale could have been overturned based on the confusion over the directions provided to Mrs. Weber. The common pleas court explained that Mrs. Weber testified that she had appeared at the tax claim bureau with a personal check prepared to pay her taxes. *Weber*, slip op. at 8. Mrs. Weber was advised by the bureau clerk that a personal check was unacceptable. *Id.* Thus, Mrs. Weber asked if the bureau would accept cash or a cashier's check. *Id.* The bureau clerk wrote the amount of taxes due on a slip of paper, and told Mrs. Weber that the amount would be good until the end of that week. *Id.*, slip op. at 8-9. Mrs. Weber asked for clarification as to whether or not cash or a cashier's check would be acceptable. *Id.*, slip op. at 9. The bureau clerk told her that either form of payment would be acceptable. *Id.* Mrs. Weber returned to the bureau with cash, but saw signage on the door stating that cash was not

13

an acceptable form of payment. *Id.* Mrs. Weber returned the same day with a cashier's check, but was told that her property was sold. *Id.* The common pleas court concluded, and we agreed, that the information received from the bureau clerk was confusing. *Id.*

Unlike here, the taxpayer in *Weber* harbored a reasonable belief, based on the statement of the bureau clerk that her taxes could be paid in full by cash by the end of the week. Significantly, there was no evidence in *Weber* suggesting that Weber could not have paid in cash at the moment the bureau clerk told her that she could. Contrariwise, the evidence in the instant matter shows that Landowner had received Judicial Sale Notice of the May 24, 2017 sale due to his failure to pay 2014 taxes in accordance with Notice 1, and therefore, his reliance on the Bureau clerk's statement was unreasonable. Because he admitted to receiving the Judicial Sale Notice, Landowner had actual notice of the already-scheduled May 24, 2017 tax sale. Landowner's failure to pay his 2015 and 2016 taxes, which generated later sale dates did not, and cannot conceivably be construed to null or void the May 24, 2017 judicial sale date; Landowner's belief to the contrary was, thus, unreasonable and unjustified.

## II. Confusing Language in the Notices

We next address the allegation that the language in Notices 1, 2, and 3, was confusing. Whenever taxes go unpaid, it is the duty of a tax collector or receiver to make a return to the tax claim bureau listing all properties on which taxes were levied and remain unpaid. Section 306(a) of RETSL, 72 P.S. §5860.306(a).[9] The tax claim bureau is then required to do the following:

---

[9] This section provides in full:

> It shall be the duty of each receiver or collector of any county, city, borough, town, township, school district or institution district taxes to

14

(a) Claims for taxes against property so returned must be entered by the bureau in the office thereof in suitable dockets.

(b) Not later than the thirtieth day of June, each year, the bureau *shall make up from the tax returns received from the taxing districts, as aforesaid, a claim for each property returned, which shall contain the unpaid taxes against such property, which are due all taxing districts as found in the various returns.* Such claims shall be entered by the bureau in a suitable claim docket and may be in the form of written or typewritten lists. *A claim shall cover the unpaid taxes due all taxing districts, but the amount due each taxing district shall nevertheless be shown separately. A number of years' taxes of different kinds may be included in one claim. Any claims shall be amendable by leave of the bureau upon notice to the defendant as the bureau may require.*

Section 307 of RETSL, 72 P.S. §5860.307 (emphasis added). Then, a tax claim bureau is required to give notice of the return, which must include the following:

Not later than the thirty-first day of July of each year, the bureau shall give only one notice of the return of said taxes and the entry of such claim in one envelope for each delinquent taxable property . . . (1) show all the information

---

make a return to the bureau on or before the last day of April of each year, but no earlier than the first day of January of that year. The return description of each such property as it appears in the tax duplicate, and the name and address of the owner as it appears in the tax duplicate, together with the amount of such unpaid taxes, penalties and interest due to but not including the first day of the month following the return. Such return shall be accompanied by a signed affidavit that the return is correct and complete. Interest shall be charged on taxes so returned from and after but not before the first day of the month following the return. Interest shall be charged at the rate of nine per centum (9%) per annum.

Section 306(a) of RETSL, 72 P.S. §5860.306(a).

shown on the claim entered, (2) state that if payment of the amount due the several taxing districts for said taxes is not made to the bureau on or before the thirty-first day of December next following, and no exceptions thereto are filed, the said claim shall become absolute, (3) state that on July first of the year in which such notice is given a one [] year period for discharge of tax claim shall commence or has commenced to run, and that if full payment of taxes is not made during that period as provided by this act, the property shall be advertised for and exposed to sale under this act, and (4) state that there shall be no redemption after the actual sale.

Section 308(a) of RETSL, 72 P.S. §5860.308(a). In other words, the tax collector or similar authority must notify the tax claim bureau, on the last day of April of each year, at the latest, of the unpaid taxes. Section 306(a) of RETSL, 72 P.S. §5860.306(a). No later than July 31 of each year, the tax claim bureau is obligated to give notice to the taxpayer of the delinquent taxes and notifies him or her of the discharge period of July 1 of that year to July 1 of the next year.[10] Section 308(a) of RETSL, 72 P.S. §5860.308(a).

Each time taxes are not paid, this procedure must be followed and, as shown, a notice must be sent each year taxes are unpaid. The Bureau complied with

---

[10] Appellees' brief offers a similar example,

Where [a taxpayer] failed to pay its 2014 property taxes, the local tax collector would file a return of those unpaid taxes with the Bureau on or before the last day of April 2015. The Bureau would then, prior to July 31, 2015, send to the owner . . . a notice of return and claim for those unpaid 2014 taxes. The notice of return and claim would notify the [taxpayer] of [the] discharge period [from] July 1, 2015 through July 1, 2016 in which the taxes could be paid in full to avoid a sale.

(Appellees' Br. at 8.)

16

these statutory mandates. Landowner failed to pay his taxes in 2014, and as required by RETSL, received Notice 1; likewise, Landowner failed to pay taxes in 2015 and 2016 and, subsequently, received Notices 2 and 3. The notices required under RETSL do not exist in a vacuum and when taken as a whole, in the context of the law, the notices were not confusing.

Because Landowner received the notices and was aware of the May 24, 2017 judicial sale of his Property, Landowner was not prejudiced or denied due process. Accordingly, we affirm the trial court.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brodhead Creek Associates, LLC,      :
           Appellant            :
           :    No. 1251 C.D. 2018
        v.              :
           :
County of Monroe, Tax Claim Bureau   :
of Monroe County, and Marek        :
Tchorzewski                 :

## *__ORDER__*

AND NOW, this 8th day of May, 2020, the August 8, 2018 order of the Court of Common Pleas of Monroe County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge