IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond Thomas and Dawn Thomas,    :
                                   :
              Appellants   :
                                   :
          v.                 : No. 743 C.D. 2021
                                 : Argued:  November 14, 2022
                                 :
County of Bucks Tax Claim Bureau      :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge (P)
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK              FILED:  February 16, 2023

Following remand,[1] Raymond and Dawn Thomas, husband and wife (collectively Owners), appeal from an order of the Bucks County Court of Common Pleas (trial court) denying their Petition to Vacate and Set Aside (Petition to Set Aside) the sale of their home, located at 284 Wynadotte Road, Fairless Hills, Pennsylvania (Property), to ADR Investments, LLC (Intervenor)[2] at the Bucks County Tax Claim Bureau's (Bureau) December 12, 2017 upset tax sale for unpaid taxes for the 2015 tax year pursuant to the Real Estate Tax Sale Law[3] (Tax Sale

---

[1] *See Thomas v. County of Bucks Tax Claim Bureau* (Pa. Cmwlth., No. 1352 C.D. 2019, filed December 29, 2020) (*Thomas I*).

[2] The trial court granted Intervenor, as the purchaser of the Property, intervenor status.

[3] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

Law). Owners argue that the trial court erred or abused its discretion by concluding that Owners' reliance on a Bureau notification regarding the 2016 tax year was unreasonable; admitting the Bureau's hearsay evidence over Owners' objections; disregarding this Court's remand decision; and allowing the Bureau to recant a prior judicial admission. Upon review, we affirm.

## I. Background

Owners failed to pay taxes on their Property for the tax years 2015, 2016, and 2017. Reproduced Record (R.R.) at 21a. In 2017, the Bureau initiated proceedings to sell the Property for outstanding property tax delinquencies for the tax years 2015 and 2016.

With regard to the 2015 tax delinquency, the Bureau undertook the following actions. On July 25, 2017, the Bureau sent notice of the sale via certified mail to each owner advising Owners that their Property would be sold at an upset tax sale on September 19, 2017, but the notices were returned unclaimed. R.R. at 24a-25a, 120a-21a, 124a-25a. On August 17, 2017, the Bureau published the notices in three newspapers. *Id.* at 26a-27a. The Bureau directed the Bucks County Sheriff's Department to personally serve and post the Property. *Id.* at 29a-30a. Because the certified mail notices were returned, the Bureau postponed the sale of the Property. *Id.* at 190a; *see id.* at 31a.

On October 4, 2017, the Bureau filed with the trial court a Petition to Waive Personal Service. Certified Record (C.R.), Petition to Waive Personal Service. The Bureau requested permission to sell several properties, including Owners' Property, at the December 12, 2017 upset tax sale without the requirement of personal notice to the owner-occupants based upon a showing of good cause. *Id.*

2

On October 17, 2017, the trial court granted the Bureau's Petition to Waive Personal Service. C.R., Trial Court Order, 10/17/17; *see* R.R. at 2a. On November 30, 2017, the Bureau mailed Owners a final notice, via certified mail, advising them that their Property would be sold at the December 12, 2017 upset tax sale. R.R. at 34a. The final notice was not returned. *Id.* at 34a.

Meanwhile, the Bureau initiated collection efforts for Owners' 2016 tax delinquency. Significant to this appeal, on November 27, 2017, the Bureau posted a notice on the Property that stated the Property would not be exposed to an upset tax sale until sometime after July 1, 2018 (November 27, 2017 Notice). The November 27, 2017 Notice listed Owners' tax arrearages for 2016 and "prior year(s)." R.R. at 140a; *see id.* at 21a.

On December 12, 2017, the Bureau held the upset tax sale for the Property. Trial Court Order, 6/1/21, Finding of Fact (F.F.) No. 5; R.R. at 188a. The sale was held because of Owners' nonpayment of the 2015 taxes. F.F. No. 6; R.R. at 188a. The Bureau sold the Property to Intervenor, which placed the highest bid. F.F. No.8; R.R. at 188a; *see* R.R. at 17a.

On January 11, 2018, Owners filed a Petition to Set Aside objecting to the sale of their Property. Owners claimed that they did not receive proper notice of the December 12, 2017 upset tax sale as required by the Tax Sale Law. Although Owners admitted actual notice of the upset tax sale, they claimed that they were confused by and relied upon the November 27, 2017 Notice, which stated that the Property would not be exposed to an upset tax sale before July 1, 2018. The November 27, 2017 Notice included taxes owed for 2015 and 2016. Owners argued that this faulty notice coupled with other representations made by the Bureau in

3

response to a request for payment plan led them to believe that the sale would not be held until after July 1, 2018.

The Bureau filed an answer to the Petition to Set Aside denying the material allegations. The trial court considered the Petition to Set Aside without holding an evidentiary hearing upon determining that Owners had not presented a *prima facie* challenge to the tax sale based on faulty notice. By order dated June 17, 2019, the trial court initially denied the Petition to Set Aside and ordered the confirmation of the December 12, 2017 upset tax sale. The trial court then vacated the June 17, 2019 order to allow the parties to submit briefs. By order dated August 16, 2019, the trial court again denied Owners' Petition to Set Aside and confirmed the December 12, 2017 upset tax sale. In the opinion that followed, the trial court explained that the Bureau "strictly complied" with the Tax Sale Law notice requirements and Owners had actual notice of the impending sale. *See* Trial Court Op., 12/6/19, at 5.

Owners filed a notice of appeal to this Court. R.R. at 6a. This Court vacated the trial court's order and remanded the matter to the trial court for further proceedings. *See Thomas v. County of Bucks Tax Claim Bureau* (Pa. Cmwlth., No. 1352 C.D. 2019, filed December 29, 2020) (*Thomas I*). We opined:

> [Owners] admission of receiving actual, advance notice of the September 1[9], 2017 upset tax sale via personal service upon [Dawn] Thomas would, under other circumstances, fatally undermine their claim that the Bureau did not comply with [the Tax Sale Law's] notice requirements. This actual notice via personal service complied with the strict requirements of . . . [the Tax Sale Law] . . . . Furthermore, this actual, advance notice relieved the Bureau of any obligation to notify [Owners] that their Property was to be exposed for purchase on December 12, 2017, rather than as originally scheduled on September 19, 2017. *See* 72 P.S. §5860.601(a) (stating in

4

relevant part, "[t]he bureau shall schedule the date of the sale no earlier than the second Monday of September and before October 1, and the sale may be adjourned, readjourned or continued. No additional notice of sale is required when the sale is adjourned, readjourned or continued if the sale is held by the end of the calendar year.").

*Thomas I,* slip op. at 14-15 (internal citations and footnote omitted). However, we determined that "the notices that were posted at the Property and mailed to [Owners] complicate[d] things significantly." *Id.* at 15. The November 27, 2017 Notice set forth a tax arrearage for 2016 and "prior years" and stated that the Property would not be exposed to an upset tax sale until after July 1, 2018. *Id.* at 15. However, the prior notices related to the 2015 taxes informed Owners that the Property would be available for purchase at the September 19, 2017 upset tax sale or another legally acceptable date. *Id.* at 15. "There is thus a *prima facie* viable argument that the Bureau failed to properly notify [Owners] that the Property might be sold at the December 12, 2017 upset tax sale, due to contradictory and inconsistent information contained in the Bureau's mailed, personally served, and posted notices." *Id.* at 15-16. Thus, we remanded to the trial court to conduct an evidentiary hearing to determine whether Owners relied upon the Bureau's November 27, 2017 Notice that the Property would not be put up for purchase at an upset tax sale until after July 1, 2018, and whether such reliance was reasonable under the circumstances. *Id.*

At the remand hearing held on February 11, 2021, Barbara Dinoia, former Bureau Director (Director), testified regarding the Bureau's compliance with the Tax Sale Law. On July 25, 2017, the Bureau sent notice via certified mail to both Owners individually indicating their 2015 tax delinquency and advising them that an upset tax sale was set for September 19, 2017. R.R. at 24a-25a, 120a, 124a. Both certified mailings were returned to the Bureau as "unclaimed. *Id.* at 25a. On

5

August 17, 2017, the Bureau published the notice of sale in the Philadelphia Inquirer, the Intelligencer, and the Bucks County Law Reporter. *Id.* at 26a-27a. Director testified that the Return of Personal Service executed by the Bucks County Sheriff's Department indicated that the Deputy Sheriff personally served Dawn Thomas with the notice of sale and posted the notice of sale on the Property on August 29, 2017. *Id.* at 30a, 135a. The sale was continued to December 12, 2017, because the sale notices were not claimed and there were ongoing efforts to contact Owners. *Id.* at 31a.

The Bureau offered 10 exhibits. R.R. at 111a. Exhibit D-1 contained the Bureau's Lien Certificate that lists the delinquent taxes owed on Owners' Property and phone notes. *Id.* at 112a-18a; *see id.* at 18a-19a. Director testified that it is the Bureau's policy for employees to maintain records after every contact with a constituent. *Id.* at 19a. Director testified that, according to Exhibit D-1, the Bureau attempted to call Owners on November 9, 2017, and December 7, 2017, to no avail. *Id.* at 22a. On November 17, 2017, the Bureau received a call from Dawn Thomas. *Id.* at 20a. During that call, a Bureau representative went over payment plan options with her, and then mailed the payment plan and payment plan rules to Owners. *Id.* at 20a.

Exhibit D-10 is a proof of mailing that lists a recipient list for all letters mailed on November 30, 2017. R.R. at 35a. Director testified that Exhibit D-10 included a copy of the sample letter sent to owners. Director explained that the sample letter is not an exact copy of the letter sent to Owners because the Bureau does not maintain those records, but it contains the same language that would have been used in the letter that was sent to Owners and clearly notified Owners of the

6

December 12, 2017 sale date. *Id.* at 35, 37. Owners objected to Exhibits D-1 and D-10 as hearsay. *Id.* at 38a, 79a. The trial court overruled the objections. *Id.* at 44a.

Dawn Thomas and her husband both testified regarding their serious and ongoing health ailments in the years preceding the sale.[4] R.R. at 83a-84a, 98a-102a. Dawn Thomas acknowledged that her mental state at the time was "not good." *Id.* at 82a. She testified that she was not personally served with the notice, but she admitted to actual notice based on the posting located on her door. *Id.* at 84a-85a. She could not remember what notices were mailed to her because the bills were "overwhelming." *Id.* at 85a. She testified that, after receiving notice of the upset tax sale, she visited the Bureau along with her son in September of 2017. *Id.* at 85a-86a. She was advised that the sale would be changed to a later unspecified date, and that she would be able to set up a payment plan. *Id.* at 86a-87a. When she received the November 27, 2017 Notice, Dawn Thomas believed the sale would not occur until after July 1, 2018. R.R. at 83a. She testified that she was confused when her Property was sold because the November 27, 2017 Notice stated the Property would not be sold until after July 1, 2018. *Id.* However, Dawn Thomas admitted she did not make further inquiries, make any payments, set up a payment plan, or leave contact information with the Bureau. *Id.* at 93a-95a.

Dawn Thomas' son also testified that he visited the Bureau with his mother. R.R. at 104a-105a. Although he did not speak with a Bureau representative, he understood from that visit that the sale may be continued to a future date. *Id.* at 105a-06a.

Based upon the testimony and evidence presented, the trial court issued findings of fact and conclusions of law and denied the Petition to Set Aside. *See*

---

[4] Dawn Thomas was diagnosed with kidney cancer and had surgery to remove her kidney. R.R. at 82a-83a. Raymond Thomas was diagnosed with leukemia. R.R. at 98a.

R.R. at 188a-93a. The trial court detailed the Bureau's efforts to comply with the Tax Sale Law. F.F. Nos. 15-20; R.R. at 189a. Critically, the trial court found that the sheriff's deputy personally served Dawn Thomas with the notice of sale and posted the Property on August 29, 2017. F.F. Nos. 18-20; R.R. at 189a. Although Dawn Thomas denied personal service, she admitted actual notice upon receiving the posted notice. F.F. No. 21; R.R. at 189a. Although Dawn Thomas claimed she visited the Bureau after receiving the posted notice in September 2017, she never signed a payment plan, tendered any money towards the delinquent tax balance, indicated what date the sale was going to be moved to, or left any contact information for the Bureau. F.F. Nos. 22-23; R.R. at 190a. Dawn Thomas understood that she had an obligation to pay property taxes and that there were consequences for the failure to do so. F.F. No. 52; R.R. at 192a.

Ultimately, the trial court concluded that the Bureau provided Owners with all required notices pursuant to the Tax Sale Law. Trial Court Order, 6/1/21, Conclusions of Law (C.L) Nos. I(1)-I(4); R.R. at 192a-93a. The trial court further concluded that Owners did not reasonably rely on the November 27, 2017 Notice that their Property would not be sold until July 2018. C.L. Nos. II(1)-II(3); R.R. at 193a.

In the opinion that followed, the trial court opined that, although Dawn Thomas denied personal service, her testimony in this regard was not credible, noting her statements were in "contradiction to the plethora of contradictory evidence presented." Trial Court Op., 8/19/21, at 6. "Believing Dawn Thomas would require this Court to determine that both the Return of Personal Service executed by the Bucks County Sheriff's Department and the phone notes entered into the [Bureau's] system were fabricated." *Id.* at 7. The trial court further opined

8

that Owners' reliance on the November 27, 2017 Notice *alone* as a basis to believe that their Property would not be sold at any upset tax sale until July 1, 2018, was not reasonable considering all prior notices regarding the impending upset tax sale. *Id.* at 8. "This is especially true considering the fact that the last notice of the [December 12, 2017 upset tax sale] was sent *after* the [November 27, 2017 Notice] was posted." *Id.* at 8 (emphasis in original). The trial court reasoned: "If [Owners] were confused by the [November 27, 2017 Notice], it would have been reasonable for them, at a minimum, to call the [Bureau] for clarification[,] and [Owners] had ample time to do so between then and the sale date." *Id.* Because Owners had actual notice of the impending sale and did not reasonably rely on the November 27, 2017 Notice as a basis to believe that their Property would not be sold at any upset tax sale until July 1, 2018, the trial court denied Owners' Petition to Set Aside and confirmed the sale of the Property. Owners' appeal to this Court now follows.[5]

## II. Issues

On appeal, Owners raise four issues. First, Owners contend that the trial court erred or abused its discretion by concluding that Owners' reliance on the November 27, 2017 Notice that the sale of the Property would not take place until after July 1, 2018, was unreasonable. Second, Owners assert that the trial court erred by admitting Bureau Exhibits D-1 and D-10 over their hearsay objections. Third, Owners argue that the Bureau disregarded *Thomas I*, in which this Court determined that the Bureau's notices did not comply with the Tax Sale Law. Fourth, Owners

---

[5] In tax sale cases, this Court's review is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision without supporting evidence. *Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50, 54 n.2 (Pa. Cmwlth. 2013).

9

maintain that the trial court erred by allowing the Bureau to recant a prior judicial admission.

### III. Discussion
### A. Reasonable Reliance

First, Owners contend the trial court erred in determining that their reliance on the November 27, 2017 Notice was unreasonable. Owners advance that the November 27, 2017 Notice did not conform to specific formats required by the Tax Sale Law because it listed all outstanding tax years, not just the 2016 tax delinquency. The Notice informed Owners that the Property would not be put up for sale if the taxes were paid before July 1, 2018. Owners received the Notice after Dawn Thomas contacted the Bureau and was advised that the September 19, 2017 sale would be postponed and a payment plan would be set up. Owners maintain that they reasonably relied on the November 27, 2017 Notice that the sale of their Property was not imminent, when in fact it was listed for and ultimately sold at the December 12, 2017 sale.

The primary purpose of the Tax Sale Law is to ensure the collection of taxes, not to strip away a citizen's property rights. *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 575 (Pa. Cmwlth. 2006). Therefore, adequate notice is a prerequisite before the execution of any tax sale. *Id.* "In all tax sale cases, the tax claim bureau 'has the burden of proving compliance with the statutory notice provisions.'" *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (quoting *Krawec v. Carbon County Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004)).

10

The notice requirements relevant to this case are set forth in Sections 602 and 601(a)(3) of the Tax Sale Law, 72 P.S. §§5860.602, 5860.601(a)(3). Section 602 requires three different forms of notice to property owners prior to an upset tax sale: notice by publication, posting, and certified/first-class mail. 72 P.S. §5860.602. "'If any of the three types of notice is defective, the tax sale is void.'" *In re Consolidated Reports*, 132 A.3d at 645 (quoting *Gladstone v. Federal National Mortgage Association*, 819 A.2d 171, 173 (Pa. Cmwlth. 2003)). "Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of the [Tax Sale] Law are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency." *Id.* "However, strict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received *actual* notice of a pending tax sale." *Id.* (emphasis added).

In addition, if the owner occupies the property, Section 601(a)(3) requires personal service of notice of the tax sale. 72 P.S. §5860.601(a)(3).[6] "The

_____

[6] Specifically, Section 601(a)(3) provides:

No owner-occupied property may be sold unless the bureau has given the owner[-]occupant written notice of such sale at least (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five

**(Footnote continued on next page…)**

11

requirements of Section 601(a)(3) are cumulative and apply in addition to the tax claim bureaus' obligations to provide notice through publications, posting, and mail." *In re Consolidated Reports*, 132 A.3d at 645. The purpose of Section 601(a)(3) is to afford a homeowner with increased protection by way of additional notice. *Id.* at 646. No owner-occupied property may be sold unless the Bureau has given the owner occupant written service of such sale at least 10 days prior to the sale by personal service by the sheriff or his deputy. 72 P.S. §5860.601(a)(3). "[W]ithout receiving a waiver from a trial court, a tax claim bureau may not sell an owner[-]occupied property absent personal notice to an owner-occupant because actual notice of the tax sale does not waive strict compliance with the personal service requirements of Section 601(a)(3)." *In re Consolidated Reports*, 132 A.3d at 646. However, "[p]ersonal service of notice on one of the owners shall be deemed personal service on all owners." 72 P.S. §5860.601(a)(3).

As this Court has summarized:

> [I]n the absence of actual notice, the Bureau must prove strict compliance with the notice requirements of Section 602 of the Law. Further, and notwithstanding whether a taxpayer received actual notice, the Bureau must demonstrate that it personally served notice on any owner-occupant of the Property subject to the upset tax sale or obtained a waiver of personal service from the trial court.

*In re Consolidated Reports*, 132 A.3d at 646.

---

(25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. §5860.601(a)(3).

12

In *Brodhead Creek Associates, LLC v. City of Monroe*, 231 A.3d 69 (Pa. Cmwlth. 2020), this Court addressed the reasonableness of a taxpayer's reliance on a bureau employee's statement that an impending upset tax sale would not take place until the following year. In *Brodhead*, a landowner failed to pay property taxes in 2014, 2015, and 2016, and received three notices regarding its tax delinquency, all of which advised that the property would be sold if the taxes were not paid. Notably, the landowner admitted that he had actual notice that his property would be sold on May 24, 2017, for failure to pay the 2014 taxes. *Brodhead*, 231 A.3d at 71-72.

However, the third notice which was sent in April 2017, which related to the 2016 tax year, listed all delinquent taxes owed for 2014, 2015, and 2016, and advised that the property would not be sold before July 1, 2018. The landowner took this notice to the tax claim bureau, and a clerk advised that the property would not be sold until 2018. Based on this statement, the landowner did not pay his delinquent taxes. The bureau sold the landowner's property in May 2017 as a result of the 2014 tax delinquency, which remained unpaid. *Brodhead*, 231 A.3d at 72-73.

The landowner challenged the sale and argued that he relied on the erroneous statement made by the bureau's clerk and claimed that the bureau's notices were confusing. Both the trial court and this Court rejected the landowner's claims. We emphasized that the landowner had actual notice that his property would be sold on May 24, 2017, based on his failure to pay the 2014 taxes. *Brodhead*, 231 A.3d at 75. It was unreasonable for the landowner to assume that the already-scheduled tax sale would be put off another year "simply because [the landowner] persisted, year after year, in failing to pay his taxes." *Id.* at 76. We reasoned:

> If we were to accept [the landowner's] argument, each time he failed to pay taxes, the tax sale would be

13

> postponed, in accordance with the most recent notice. . . . A taxpayer could avoid paying taxes *ad finitum* despite having received notice of a scheduled sale due to his failure to pay taxes in a prior year.

*Id.* Thus, we concluded that the landowner's reliance on the notice and the clerk's statement that the sale would not transpire until after July 1, 2018, was unreasonable. *Id.* at 77-78. We further concluded that the tax claim bureau complied with the Tax Sale Law and provided requisite notice for each delinquent tax year, which "when taken as a whole, in the context of the law, . . . were not confusing. *Id.* at 79. Thus, we upheld the sale of the property. *Id.*

Here, the Bureau complied with the requirements of the Tax Sale Law to provide notice of the upset tax sale for the 2015 delinquency. The Bureau sent notice by certified/first-class mail, publication in three different newspapers, and by posting the Property, as required by Section 602 of the Tax Sale Law. R.R. at 24a-27a, 30a, 120a, 124a, 128a-132a, 134a, 137a; *see id.* at 84a. Although the mailed notices were returned unclaimed, *id.* at 121a, 125a, Dawn Thomas admitted to actual notice. *Id.* at 85a; *see In re Consolidated Reports*, 132 A.3d at 645. Although Dawn Thomas denied personal service, the trial court credited the Bureau's evidence that the Bucks County Sheriff's Department posted the Property and personally served Dawn Thomas with the notice of the sale on August 29, 2017, in accordance with Section 601(a)(3) of the Tax Sale Law. *See* R.R. at 30a, 135a. In addition, the Bureau obtained a waiver of personal service from the trial court for good cause shown. *See* C.R., Petition to Waive Personal Service; C.R., Trial Court Order, 10/17/17; *see also* R.R. at 2a.

These notices provided that the sale would be held on September 19, 2017. Although the tax sale was continued to December 12, 2017, additional notice was not required because "the sale [was] held by the end of the calendar year."

14

72 P.S. §5860.601(a). On November 30, 2017, the Bureau mailed a final notice of the December 12, 2017 sale date to Owners, via regular mail, which was not returned, suggesting it was properly delivered and received by Owners. R.R. at 36a.

As for Owners' claims that they relied on the November 27, 2017 Notice that their Property would not be sold until after July 1, 2018, as in *Brodhead*, such reliance was unreasonable. Dawn Thomas had actual notice of the pending upset tax sale for the 2015 delinquency. Critically, Owners acknowledged their obligation to pay taxes, but they never made any payments. *See* R.R. at 94a-95a. Even assuming Dawn Thomas had visited the Bureau in September 2017,[7] Owners took no action following that visit to stop the sale of their Property. They made no payments towards the delinquency and did not set up a payment plan. Despite Dawn Thomas' confusion upon receiving the November 27, 2017 Notice, she did not make any further inquiries with the Bureau regarding the status of the impending sale. Upon review, the trial court did not err or abuse its discretion in determining that Owners' reliance on the November 27, 2017 Notice that the Property would not be put up for purchase at an upset tax sale until after July 1, 2018, was not reasonable under the circumstances.

## B. Exhibits

Next, Owners argue that the trial court erred by admitting and relying upon Bureau Exhibits D-1, Bureau's Lien Certificate and phone log, and D-10, proof of mailing, over their hearsay objections. Owners contend that neither exhibit meets the business record exception because they are untrustworthy and a foundation was not properly laid. With regard to Exhibit D-1, Owners assert that Director never

---

[7] The Bureau had no record of this visit. *See* R.R. at 20a-22a; *see also id.* at 117a-18a.

15

testified how the phone notes were maintained or whether they were made at the time of each call. With regard to Exhibit D-10, Owners aver the Bureau presented this exhibit for the first time at the remand hearing and offered it to prove that the Bureau notified Owners that the sale would occur on December 12, 2017. However, the proof of mailing contains a letter that was sent to a completely unrelated owner on November 21, 2017, and does not contain a copy of the actual notice mailed to Owners.

Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Pa. R.E. 801(c). Generally, "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa. R.E. 802. One such exception to the rule against hearsay exists for records of regularly conducted activities. Pa. R.E. 803(6). A record qualifies if:

> (A) The record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [Pa. R.E.] 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show the source of information or other circumstances indicate a lack of untrustworthiness.

Pa. R.E. 803(6).

Here, Exhibit D-1 is the Bureau's Lien Certificate and phone log. R.R. at 112a-18a. It lists the delinquent taxes owed on the Property, and states for the

16

2015 tax year that Owners owed $4,263.84 in delinquent school taxes. *Id.* at 113a. It also includes the Bureau's phone notes with Owners. *Id.* at 117a. Director testified that the Bureau's policy requires employees to enter notes after every contact with a constituent; employees are trained on how to enter notes; Director oversees and instructs employees on how to enter the notes; and it is a violation of Bureau policy to not enter a note. *Id.* at 19a. Contrary to Owners' assertions, Director's testimony in this regard provided a proper foundation for the admission of Exhibit D-1 under the business records exception to the hearsay rule. Thus, the trial court did not err in admitting and relying upon this exhibit over Owners' hearsay objection.

As for Exhibit D-10, this exhibit is the Bureau's proof of mailing for the November 30, 2017 Notice. R.R. at 35a, 61a, 142a-44a. The exhibit lists the names and addresses of the notice recipients, including both Owners, to whom the Bureau mailed notices on November 30, 2017. *Id.* at 35a, 143a. The postmaster stamped and signed the proof of mail verifying that the post office received the letters as listed and mailed them on November 30, 2017. *Id.* at 36a, 143a. Director testified that Exhibit D-10 also included a "sample" letter that is representative of the notices mailed to Owners as well as other persons with delinquent taxes for 2015. *Id.* at 36a, 61a, 144a. It is a form-letter template in which the Bureau fills in the individual information for each property owner. *See id.* at 62a, 144a. As for why a sample notice was offered and not the actual notice sent to Owners, Director explained that the Bureau does not keep file copies of the actual notices sent. *Id.* at 63a. The Bureau only keeps copies of returned notices. *Id.* at 63a-64a. Owners' November 30, 2017 Notices were not returned. *Id.* at 63a-64a. Director's testimony adequately laid a proper foundation for the admission of Exhibit D-10 to be used as

17

a sample. The trial court admitted this exhibit solely for "the purpose of establishing what the letter would have been or should have been; it was nothing more than a sample." Trial Court Op., 8/19/21, at 11. It was "up to the parties to submit further evidence as to whether this letter was representative of the one sent to [Owners]." *Id.* at 10-11. Upon review, the trial court did not err in admitting this exhibit and relying upon it merely as a sample.

### C. *Thomas I*

Next, Owners argue that the trial court disregarded this Court's prior decision in *Thomas I* on remand. According to Owners, this Court determined that, although there was actual notice of the sale, the Bureau's inconsistent notices were "facially noncompliant." Appellants' Brief at 4, 14. This Court remanded the matter to the trial court solely to determine whether Owners' reliance on the Bureaus' inconsistent notices was reasonable.

In *Thomas I*, this Court concluded that the trial court erred by denying the Petition to Set Aside without holding an evidentiary hearing. This Court further found that there was a *prima facie* argument that the Bureau failed to properly notify Owners that the Property might be sold at the December 12, 2017 upset tax sale because of the contradictory and inconsistent information contained in the Bureau's notices. *Id.*, slip op. at 16. It was specifically noted that our caselaw does "not squarely contemplate a situation . . . where a tax [claim] bureau initially complies with [the Tax Sale Law's] notice requirements but then sends the affected property owner potentially confusing, contradictory, and misleading information." *Id.* The remand was ordered to allow the parties to present evidence and testimony to determine whether Owners reasonably relied upon the Bureau's representation that the Property would not be put up for purchase at an upset tax sale until after July 1,

18

2018. *Id.* This Court never held the Bureau's notices were "facially noncompliant." Rather, this Court noted that an evidentiary hearing was necessary because of "the strangely inconsistent sale notices that the Bureau provided to [Owners], *which cannot collectively be deemed to be facially compliant with the Tax Sale Law.*" *Id.* at 11 (emphasis added). An evidentiary hearing before the trial court was necessary for the Bureau to establish strict compliance with the Tax Sale Law notice requirements. *Id.* Following the evidentiary hearing, the trial court determined that the Bureau met all the notice requirements. We conclude that the trial court adhered to, and did not disregard, this Court's prior decision. *See Thomas I.*

### D. Judicial Admission

Finally, Owners contend that the trial court erred in allowing the Bureau to reverse its prior admission that the notice mailed in Exhibit D-10 was identical to the notices mailed in the beginning via certified mail. Owners argue that in the two years prior to the remand hearing in this matter, the Bureau represented that on November 30, 2017, it mailed a form of notice identical to the notice that it mailed in July 2017. Owners assert that only after remand did the Bureau produce a new form of notice.

A judicial admission is "an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission," and may be contained in pleadings, stipulations, and other like documents. *Sherill v. Workmen's Compensation Appeal Board (School District of Philadelphia)*, 624 A.2d 240, 243 (Pa. Cmwlth. 1993). For an averment to qualify as a judicial admission, it must be a clear and unequivocal admission of fact. *John B. Conomos, Inc. v. Sun Company*, 831 A.2d 696, 713 (Pa. Super. 2003). The fact must have been unequivocally admitted and not be merely one interpretation of the

19

statement that is purported to be a judicial admission. *Jones v. Constantino*, 631 A.2d 1289, 1293-94 (Pa. Super. 1993).

Here, early in the proceedings, the Bureau originally represented that the notice contained in Exhibit D-10 was identical to the initial notices previously provided to the Owners. However, during the course of the remand hearing, the Bureau acknowledged that the November 30, 2017 Notice was different from the notices previously sent via certified mail. *Id.* at 42a. The Bureau offered the notice in D-10 as a sample of what would have been mailed on November 30, 2017, because the Bureau did not maintain actual copies of all the letters sent. *Id.* at 42a. The Bureau's clarification of a prior miscommunication does not constitute a reversal of a prior judicial admission. The trial court did not err or abuse its discretion by accepting this clarification.

## IV. Conclusion

Although we express empathy for Owners and the unfortunate circumstances that led to the sale of their home, the trial court did not err or abuse its discretion by determining that Owners' reliance on the November 27, 2017 Notice was unreasonable, admitting the Bureau's exhibits, following our remand instructions, or accepting the Bureau's clarification. Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond Thomas and Dawn Thomas,      :
                                     :
                        Appellants   :
                                     :
            v.                       : No. 743 C.D. 2021
                                     :
                                     :
County of Bucks Tax Claim Bureau     :


# **O R D E R**


AND NOW, this 16th day of February, 2023, the order of the Bucks County Court of Common Pleas, dated June 1, 2021, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge