IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristen Moyer      :
           :
  v.       : No. 241 C.D. 2023
           :
Schuylkill County Tax Claim Bureau :
and Commonwealth Commerce, LLC, :
as Trustee for the 010722 Portfolio :
Trust        :
           :
Appeal of: Commonwealth   :
Commerce, LLC, as Trustee for the :
010722 Portfolio Trust   : Argued: December 4, 2023

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER       FILED: January 19, 2024

  Commonwealth Commerce, LLC, as Trustee for the 010722 Portfolio Trust (Trust), appeals from the February 10, 2023 order of the Court of Common Pleas of Schuylkill County (trial court) sustaining objections filed by Kristen Moyer (Owner) to a September 26, 2022 upset tax sale that disposed of Owner's real property located at 107 Vine Street, Ringtown, Pennsylvania (Property). The Trust argues that the trial court erred in disallowing the September 26, 2022 upset tax sale because the sale conducted by the Schuylkill County Tax Claim Bureau (Bureau) complied with the requirements set forth in the Real Estate Tax Sale Law (RETSL),[1] including notice of the pending upset tax sale to Owner, who failed to pay the delinquent taxes prior to the sale date, and that the Bureau was not obligated to accept Owner's

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

evidence that the Pennsylvania Homeowner Assistance Fund (PAHAF)[2] would provide the funds necessary to pay the delinquent taxes.[3]  After careful review, we affirm the trial court.

## I. Background

The facts in this matter are undisputed.  Due to $6,946.58 in delinquent real estate taxes, the Property was exposed to an upset tax sale on September 26, 2022, and sold to the Trust.  Owner filed objections to the upset tax sale on November 23, 2022, arguing that she notified the Bureau on September 22, 2022, that she received funding to pay the outstanding taxes from PAHAF and that PAHAF had mailed a check in that amount to the Bureau.  The Bureau refused to review the letter Owner provided from PAHAF to substantiate the payment, which the Bureau received on the date of the upset tax sale.  Owner contended that the Bureau erred in refusing to accept the letter from PAHAF as evidence that the taxes would be paid, and she requested that the trial court set aside the upset tax sale.

The trial court held a hearing on Owner's objections on February 2, 2023. Owner testified on her own behalf and presented documentation from PAHAF demonstrating that Owner had funding available to pay the delinquent taxes.  The Bureau presented the testimony of its interim Assistant Director, Deborah Dasch.

---

[2] PAHAF is a program funded by the United States Department of the Treasury and administered by the Pennsylvania Housing Finance Agency that assists homeowners facing financial hardship because of the COVID-19 pandemic.   https://pahaf.org/faqs/ (last visited Jan. 18, 2024). PAHAF's website indicates that it has paused new applications, effective February 1, 2023.

[3] We have reordered the Trust's arguments and consolidated issues to the extent they overlap.  The Bureau filed a separate brief in which it adopted the Trust's arguments and also argued that, once Owner had notice of the upset tax sale and failed to pay the outstanding taxes prior to the date of sale, the trial court had no authority to set aside the upset tax sale.

Owner acknowledged that she was delinquent in paying the 2020 real estate taxes on the Property and that she received notice of the pending upset tax sale at the beginning of September 2022. After receiving notice of the upset tax sale, Owner contacted the Bureau to find out the total amount of delinquent taxes owed. Thereafter, Owner filed an application with PAHAF for assistance with paying the delinquent taxes, which PAHAF approved. On September 22, 2022, Owner received an email from PAHAF with an attached letter indicating that a check for $6,946.58 was mailed to the Bureau in satisfaction of the Property's delinquent taxes. The letter from PAHAF provided the pertinent tax account information, along with Owner's name and the Property's address. PAHAF's letter provided an email address and telephone number should the Bureau have any questions.

Owner contacted the Bureau to confirm it received the payment from PAHAF. Based on a conversation Owner had with the Bureau's staff, Owner understood that PAHAF's check had not yet arrived, and that the Bureau would not accept the letter PAHAF emailed to Owner as proof of payment. Instead, PAHAF had to contact the Bureau directly. After speaking with someone from PAHAF, Owner believed that PAHAF forwarded the September 22, 2022 letter to the Bureau. Approximately two weeks later, Owner was notified by "[s]omebody" that the Property had been sold at the September 26, 2022 upset tax sale. Reproduced Record (R.R.) at 89.[4]

Ms. Dasch testified that the Property's delinquent taxes had to be paid by 4:30 p.m. on September 23, 2022, before the Property would be removed from the upset tax sale. Regarding the assistance available through PAHAF, Ms. Dasch advised

---

[4] The Trust's reproduced record does not comply with Pa.R.A.P. 2173, which requires that "the pages of . . . reproduced record . . . shall be numbered separately in Arabic figures . . . followed by a small a[.]" The Trust failed to include the small "a" in its page numbers. Therefore, the citations herein reflect those in the reproduced record.

3

her contacts with PAHAF of the September 23, 2022 payment deadline. If payment was not received by September 23, 2022 at 4:30 p.m., the Bureau required that someone affiliated with PAHAF send the Bureau an email confirming that PAHAF was "in the process of cutting a check" and that the delinquent taxes were "guaranteed to be paid." *Id.* at 105. If PAHAF could provide proof that a taxpayer qualified for assistance, the Bureau would "pause" the upset tax sale of the associated property. *Id.* at 108. Ms. Dasch acknowledged that she received an email from Karmesha Pitt, a servicing specialist with PAHAF, on September 21, 2022, in which Ms. Pitt requested the total amount of taxes owed for the Property; however, Ms. Dasch did not receive any confirmation from PAHAF that Owner's application was approved or that PAHAF had issued a check to cover the Property's delinquent taxes. Ultimately, the Bureau received PAHAF's check for $6,946.58, along with PAHAF's September 22, 2022 letter, on September 26, 2023, after the Property had been sold. Ms. Dasch testified that, had she received an email from PAHAF before 4:30 p.m. on September 23, 2022, the Bureau would have paused the upset tax sale of the Property.

During cross-examination, Ms. Dasch acknowledged that she "may have" spoken with Owner in the week prior to the upset tax sale and that nothing would have prevented her from reviewing the letter Owner received from PAHAF. *Id.* at 111. Ms. Dasch stated that the Bureau does not accept such letters from taxpayers, however, because they could modify an email to "make it say whatever they want it to say." *Id.* at 112. Ms. Dasch conceded that, if she "had the time[,]" she could have reached out to PAHAF to confirm that the letter Owner would have provided was legitimate; however, Ms. Dasch advised that her office is "swamped with work and customers and phone calls" prior to an upset tax sale. *Id.* at 118.

4

The Bureau submitted into evidence two email exchanges between Ms. Dasch and PAHAF staff. In an August 31, 2022 email, Sharon Gagel, a servicing specialist with PAHAF, inquired of Ms. Dasch as to the last date upon which upset tax sales could be stayed, and whether Ms. Dasch would "accept an email that a grant ha[d] been drafted . . . ." *Id.* at 140. Ms. Dasch replied that she had been given the authority to "'pause' any property for which [PAHAF] can provide proof that the owner is qualified for the program and a check will be sent to us." *Id.* If Ms. Gagel provided the information prior to 4:30 p.m. on September 23, 2022, Ms. Dasch would "pause the parcel in question to get it off the sale." *Id.* The September 21, 2022, email Ms. Dasch received from Ms. Pitt requested tax information specific to Owner and the Property. Ms. Pitt advised that Owner was seeking financial assistance from PAHAF and that time was "of the essence[.]" *Id.* at 140. In her response, Ms. Dasch attached several documents detailing the taxes owed on the Property, and she advised Ms. Pitt to "let [her] know if [she] had any questions." *Id.* at 130.

The trial court issued an order and opinion on February 10, 2023, sustaining Owner's objections and disallowing the September 26, 2022 upset tax sale. The trial court noted that Ms. Dasch could have confirmed Owner's receipt of funding from PAHAF, as Ms. Dasch had previously corresponded with PAHAF staff by email. Ms. Dasch did not dispute the legitimacy of the September 22, 2022 letter Owner wished to forward or refute that PAHAF sent funds prior to the September 23, 2022 deadline. The trial court rejected Ms. Dasch's explanation that her office is understaffed and busy in the week prior to an upset tax sale. Although Owner indisputably failed to pay the real estate taxes on the Property, the trial court found that Owner took appropriate steps to apply for emergency funding from PAHAF.

5

After PAHAF approved her application, Owner contacted the Bureau to provide documentation that she had funding to cover the delinquent taxes on the Property, which the Bureau refused to review. The trial court recognized that PAHAF "appear[ed] to have dropped the ball[,]" as Owner advised PAHAF that it should contact the Bureau directly. *Id.* at 32. Regardless, the trial court observed that the Bureau "works for the people and not the other way around[,]" suggesting that the Bureau could hire more staff if it was overly busy, particularly given the Bureau's awareness of the emergency funding program administered by PAHAF. *Id.* The trial court deemed the Bureau's staffing issues an insufficient reason to divest Owner of her property when confirmation of payment was available. Ultimately, the trial court concluded that allowing the upset tax sale of the Property to go forward would punish Owner, who did "everything within her power to pay the delinquent taxes on or before the deadline." *Id.* at 33.

This appeal followed.[5]

## II. Issues

On appeal, the Trust argues that the trial court erred in disallowing the September 26, 2022 upset tax sale because the Bureau complied with the requirements set forth in the RETSL, including notice of the pending upset tax sale to Owner, who failed to pay the delinquent taxes prior to the sale date, and that the Bureau was not obligated to accept Owner's evidence that PAHAF would provide the funds necessary to pay the delinquent taxes.

---

[5] This Court's scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision that lacks supporting evidence, or clearly erred as a matter of law. *Nguyen v. Del. Cnty. Tax Claim Bureau*, 244 A.3d 96, 101 n.3 (Pa. Cmwlth. 2020).

## III. Discussion

"[I]t is a momentous event . . . when a government subjects a citizen's property to forfeiture for the non-payment of taxes." *Tracy v. Chester Cnty. Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985). The primary purpose of RETSL is not to strip away a citizen's property rights but to ensure the collection of taxes. *In re Consol. Reports and Return by Tax Claims Bureau of Northumberland Cty. of Prop.*, 132 A.3d 637, 651 (Pa. Cmwlth. 2016) (internal citations omitted). "Prior to the sale of real property for unpaid taxes, a tax claim bureau must give a taxpayer notice and *opportunity to cure* the unpaid taxes." *Jenkins v. Fayette Cnty. Tax Claim Bureau*, 176 A.3d 1038, 1044 (Pa. Cmwlth. 2018) (emphasis in original).

The Trust argues that the trial court erred in disallowing the September 26, 2022 upset tax sale because the Bureau complied with all requirements in RETSL and Owner indisputably received notice of the upset tax sale. The Trust contends that the trial court imposed burdens on the Bureau that do not appear in RETSL, such as accepting Owner's evidence that she received funding from PAHAF or contacting PAHAF to confirm Owner's receipt of same. Additionally, the Trust argues that the trial court erred in finding that Owner provided the Bureau with adequate proof that the delinquent taxes would be paid and in disallowing the upset tax sale based on the Bureau's refusal to accept Owner's proof of payment by PAHAF. The Trust notes that the Bureau would not accept proof from Owner due to potential fraud and PAHAF did not provide the required communication by September 23, 2022 at 4:30 p.m. RETSL does not mandate that a tax claim bureau accept a property owner's "potentially fraudulent communication" from PAHAF or require that a tax claim bureau take affirmative steps to confirm a property owner's acceptance into the PAHAF program. Trust's Br. at 19.

7

In disallowing the upset tax sale, the trial court relied on *Jenkins*, in which this Court upheld the setting aside of an upset tax sale where the taxpayer attempted to pay her delinquent taxes three days before the sale and the county tax claim bureau "improperly refused" her payment. *Jenkins*, 176 A.3d at 1043. We rejected the argument that the county tax bureau had fully complied with RETSL because, "[p]rior to the sale of real property for unpaid taxes, a tax claim bureau must give a taxpayer notice and *opportunity to cure* the unpaid taxes." *Id.* at 1044 (emphasis in original).

The facts in *Jenkins* differ somewhat from the instant appeal, as Owner indisputably did not pay the taxes prior to the upset tax sale. It is clear from Ms. Dasch's testimony, however, that had PAHAF presented proof prior to the September 23, 2022 deadline that payment was forthcoming, the Bureau would have removed the Property from the upset tax sale. The Bureau would not consider the identical proof offered by Owner well in advance of the September 23, 2022 deadline.

The Trust is correct that RETSL does not require a tax claim bureau to take affirmative steps to confirm that payment of delinquent taxes is forthcoming. This Court has declined to find that an affirmative duty exists on the part of a tax claim bureau where a corresponding statutory right of the taxpayer does not also exist. For example, in *Matter of Tax Sale 2018-Upset*, 227 A.3d 957 (Pa. Cmwlth. 2020), this Court held that a tax claim bureau did not have an affirmative duty to notify taxpayers of the option to enter into an installment agreement for the payment of delinquent taxes because Section 603 of RETSL, 72 P.S. § 5860.603, did not create a statutory right for the payment of taxes in installments. Rather, installment payments were an option to be determined by the tax claim bureau.

8

This Court has held that an affirmative duty exists, however, where a statute grants an individual "an actual entitlement" or "an unqualified right to receive the benefit[.]" *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812-13 (Pa. Cmwlth. 2007). In such a situation, the individual is entitled to protection under the due process clause. Instantly, per *Jenkins*, Owner was entitled to have the "*opportunity to cure* the unpaid taxes." *Jenkins*, 176 A.3d at 1044 (emphasis in original). To that end, Owner received funding from PAHAF to cover the delinquent taxes, the proof of which she attempted to provide to the Bureau. The Bureau refused to review the substantiating documentation Owner received directly from PAHAF, despite the Bureau's policy of pausing the sale of properties for which PAHAF could provide proof that an owner qualified for relief from PAHAF and provide confirmation that payment would be sent. While Ms. Dasch testified that only documentation sent directly by PAHAF was acceptable, her August 31, 2022 email to Ms. Gagel did not specify that a property owner could not forward information received from PAHAF, and there is no dispute that the letter Owner wished to present to the Bureau was a copy of the letter PAHAF mailed to the Bureau.

Ultimately, the Bureau created a policy that offered Owner an additional opportunity to cure the delinquent taxes on the Property – a policy that the Bureau failed to follow when it rejected the proof of payment Owner obtained from PAHAF. Thus, Owner's opportunity to cure was essentially illusory, as Owner was forced to rely on the assurances of PAHAF that it sent the requisite proof. As noted above, the purpose of RETSL is to ensure the collection of taxes, not to strip a taxpayer of her property. While Owner obtained funding to pay the delinquent taxes on the Property, and obtained proof that payment was forthcoming, the Bureau elected to

9

strip Owner of her property instead. Under the specific facts of this case, the Bureau's concerns that taxpayers would manipulate an email to "make it say whatever they want it to say," are simply insufficient to justify disposing of the Property at an upset tax sale. R.R. at 112.

The Trust argues that Owner is solely responsible for not paying the delinquent taxes on the Property, resulting in its sale. It suggests that the trial court's decision to grant Owner's exceptions creates a slippery slope that would permit objections to a tax sale for reasons beyond a tax claim bureau's failure to comply with RETSL. The Trust contends that, should this Court affirm the trial court, any taxpayer could prevent an upset tax sale by submitting a fraudulent document indicating that a third party had committed to paying the taxes.

We are not convinced by the Trust's argument, as the instant appeal presents specific and unique facts, and our holding herein is limited to those circumstances. Moreover, Ms. Dasch testified that an upset tax sale would only be paused based on payment by a government-funded program. The Bureau's policy would not apply where payment was guaranteed by a private individual.

For the reasons set forth above, we conclude that the trial court did not err in sustaining Owner's objections to the September 26, 2022 upset tax sale. Accordingly, we affirm the trial court.

_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristen Moyer                    :
                                        :
      v.                  :  No. 241 C.D. 2023
                                          :
Schuylkill County Tax Claim Bureau  :
and Commonwealth Commerce, LLC,:
as Trustee for the 010722 Portfolio  :
Trust                          :
                                          :
Appeal of: Commonwealth          :
Commerce, LLC, as Trustee for the  :
010722 Portfolio Trust           :

# **O R D E R**

AND NOW, this 19th day of January, 2024, the February 10, 2023 order of the Court of Common Pleas of Schuylkill County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge